CONTINENTAL WESTERN INSURANCE COMPANY v.
DARRYL TOAL, ALSO KNOWN AS
TONY JOHNSON, AND OTHERS.
TRAVELERS INSURANCE COMPANY v.
JAMES EDWIN ROSS AND OTHERS.

244 N. W. 2d 121.

June 18, 1976—Nos. 45813, 45833.

*MacIntosh, Commers & Rex, Lawrence Commers, Bruce P. Barten, Cragg & Bailly, Robert S. Cragg,* and *Donald H. Nichols,* for appellants.

*Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, O. C. Adamson II,* and *Thomas L. Adams,* for respondent Continental Western.

*Richards, Montgomery, Cobb & Bassford* and *Lynn G. Truesdell III,* for respondent Travelers.

Heard before Sheran, C. J., Otis, Kelly, MacLaughlin, and Breunig, JJ., and considered and decided by the court en banc.

MacLaughlin, Justice.

These are declaratory judgment actions by respondents, Continental Western Insurance Company and Travelers Insurance Company, seeking a determination of no insurance coverage for a killing which occurred during the course of an armed robbery by their insureds. A jury returned a special verdict finding that the killing was "expected or intended from the standpoint of [the insureds]" who were willing participants in the armed robbery. The trial court ordered declaratory judgment in favor of the insurance companies. We affirm.

On August 6, 1972, a group of individuals attempted an armed robbery of the Stardust Lanes bowling alley in Minneapolis. The participants included James Edwin Ross, Darryl Toal (also known as Tony Johnson), Noah Lindsey, Wade Russell, Isaac Russell, Tommy Russell, and Renee Huggar. Ross was the "chief planner" of the armed robbery. Ross talked Toal into joining in the robbery because Toal was "good as a pistol man" and had previously participated in other armed robberies. Ross diagramed the layout of the bowling alley for Toal and explained to Toal that his assignment was to go in and get the money and come out. When Toal expressed concern about his safety, Ross said he would provide Toal with a gun. Subsequently, Ross gave him a .38-caliber handgun, loaded it, and told Toal "all you got to do is pull the trigger." Toal was taken to a firing range to "check * * * his accuracy" with a gun. Ross also supplied Isaac Russell, another participant in the robbery, with a loaded .38-caliber pistol.

It is clear from the testimony that while Ross and Toal did not specifically intend to shoot anyone during the robbery, they did intend to threaten people with the guns and to use them if it became necessary to accomplish the robbery. Ross knew that at least four of the participants were carrying guns. He claimed that it never entered his mind that anyone would be shot, although he admitted that it was no "great surprise" or "shock" when the robbers discovered that someone had been shot. Toal

conceded that before the robbery he was afraid somebody might get hurt or killed.

During the robbery, Toal entered the bowling alley, went to the counter, and pulled his gun. He pointed his loaded .38-caliber pistol at the employee behind the counter, Mr. Daniel Erickson, saying, "This is a stickup." When Erickson responded, "This must be a joke of some kind," Toal struck him in the head with the butt of the gun, causing the gun to discharge. Erickson stumbled, but had not been hit by the bullet. As Toal reached the cash register, he heard two more shots. He turned around to see Wade Russell leaning over the counter and Erickson lying on the floor. Wade Russell had apparently shot Erickson twice in the back with a .22-caliber pistol. After the shooting Toal and Russell ran out of the bowling alley without the money. Toal ran down an alley to a location where Ross was waiting in a car with the motor running.

Erickson died as a result of his gunshot wounds. His widow brought a wrongful death action against the participants in the robbery on the theory that they were all engaged in a joint venture. It was ascertained that Ross was a named insured under a $50,000 policy of homeowners insurance with Travelers Insurance Company, and that Toal was insured under a $25,000 homeowners policy with Continental Western Insurance Company. Anticipating a claim under these policies, the liability insurers for Ross and Toal brought this declaratory judgment action seeking a determination of no coverage on the ground that the injury was "expected or intended" and, therefore, excluded from coverage. The matter was tried in district court before a jury. At the close of trial the court instructed the jury, over the objection of appellants, as follows:

"* * * [I]t is the law that one is charged with intending the natural and probable consequences of his willful acts and with expecting the foreseeable results of such acts.

"There is a distinction between intending an act and intending a result, and the fact that something happened does not neces-

sarily mean it was the natural and probable consequences of that act.

"In determining the foreseeability of the result, you jurors should weigh all of the facts and circumstances concerning this matter that have been received into evidence during the trial. You are advised that foreseeability means something more than a possibility, something less than a certainty."

The jury returned a special verdict finding that the injury was "expected or intended," and the trial court ordered declaratory judgments in favor of the insurance companies. Motions for judgment notwithstanding the verdict, for an amended order for declaratory judgment, or for a new trial in each action were denied. These appeals followed.

The issues raised are: (1) Whether the trial court's instruction that "it is the law that one is charged with intending the natural and probable consequences of his willful acts and with expecting the foreseeable results of such acts" is proper and correct when interpreting liability insurance policy clauses which excluded from coverage bodily injury "expected or intended from the standpoint of the insured"; and (2) whether on the facts of this case, the court may infer an intent to injure as a matter of law.

The insurance policy covering Ross provides:

"The Travelers will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury or property damage, to which this section applies, caused by an occurrence. * * *

\* \* \* \* \*

" 'occurrence' means an accident including injurious exposure to conditions, which results, during the policy term, in bodily injury or property damage *neither expected nor intended from the standpoint of the Insured.*" (Italics supplied.)

The insurance policy covering Toal provides:

"This policy does not apply to bodily injury or property dam-

age which is either *expected or intended from the standpoint of the insured.*" (Italics supplied.)

The insurers contend that the killing of Mr. Erickson was "expected or intended" by the insureds since they clearly intended to commit the armed robbery and the killing was a direct result of that robbery. Appellants counter that, in order for these exclusions to apply, the insurers must show that the insureds specifically intended Erickson's injury, and that merely showing that the act which caused the injury was intentional is insufficient to exclude coverage under the policy.

The trial court broadly interpreted the exclusion and instructed the jury to the effect that if the insured intends an act he also intends the natural and probable consequences of that act. Under the trial court's interpretation of the clause, it is immaterial whether the insured actually intended the injury so long as the injury is a natural and probable consequence of an intentional act. After careful consideration, we have concluded that the trial court was incorrect in its interpretation. In Caspersen v. Webber, 298 Minn. 93, 98, 213 N. W. 2d 327, 330 (1973), we held that an insurance policy's intentional injury exclusion—

"* * * does not relieve the insurer of liability unless the insured has acted with intent to cause a bodily injury. When the act itself is intended but the resulting injury is not, the insurance exclusion has no application."[1]

In Caspersen, the insured had pushed a hatcheck girl out of his way, causing her to lose her balance. She fell against a rack attached to the wall and was injured. Her injuries were the natural and probable consequence of the insured's intentional act and, accordingly, the insured was found liable for the intentional tort

---

[1] While in Caspersen this court was interpreting an exclusion for "bodily injury * * * caused intentionally by or at the direction of the insured," and in the instant case the exclusion is for "bodily injury * * * expected or intended from the standpoint of the insured," there is no substantial distinction in meaning. See, Lyons v. Hartford Ins. Group, 125 N. J. Super. 239, 310 A. 2d 485 (1973).

of assault and battery. We held that the assault and battery did not come within the intentional injury exclusion clause in the defendant's insurance policy because the insured's conduct did "not indicate an intention to cause bodily injury to plaintiff although he did intend the act which caused her injuries." (298 Minn. 99, 213 N. W. 2d 330).

Our holding in Caspersen which recognized a distinction between intentional acts and unintended injuries is consistent with the general rule that "it is the harm itself that must be intended before the exclusion will apply." Annotation, 2 A. L. R. 3d 1238, 1241 (cited with approval in Caspersen v. Webber, supra).[2] The rationale underlying the general rule is that the insurance contract excludes only intended injuries and there is no need or public policy justification for expanding this exclusion through presumptions of intent. As the court in American Ins. Co. v. Saulnier, 242 F. Supp. 257, 261 (D. Conn. 1965) stated:

"While the needs of a safe society for a civil remedy to satisfy an otherwise frustrated victim may be taken into account by courts in laying down a rule of law, the range of reference for the interpretation of language in an insurance policy, is the contract itself read in the light of the purpose of the parties entering into it."

Thus the presumption in tort and criminal law that a person intends the natural and probable consequences of his intentional acts has no application to the interpretation of terms used in insurance contracts. Vanguard Ins. Co. v. Cantrell, 18 Ariz. App.

---

[2] Thus, it has been held that the intentional injury exclusion does not apply, for example: Where the insured intentionally fires at one individual but unintentionally wounds the plaintiff (Smith v. Moran, 61 Ill. App. 2d 157, 209 N. E. 2d 18 [1965]); where the insured intentionally throws a lighted firecracker into a room with the plaintiff inside but intending only to frighten the plaintiff (Morrill v. Gallagher, 370 Mich. 578, 122 N. W. 2d 687 [1963]); or where the insured intentionally shoots at plaintiff with a B-B gun intending only to frighten and not injure him (State Farm Fire & Cas. Co. v. Muth, 190 Neb. 272, 207 N. W. 2d 364 [1973]).

486, 503 P. 2d 962 (1972); Lumbermens Mutual Ins. Co. v. Blackburn, 477 P. 2d 62 (Okla. 1970). Therefore, we conclude that the trial court's instruction in the instant case that the intentional injury exclusion precludes recovery for all injuries which are the natural and probable consequence of an insured's intentional act was inappropriate.

We have reached the same conclusion with respect to the trial court's instruction that, if the injury was a *foreseeable result* of an intentional act, it was an injury "expected from the standpoint of the insured." Defining "expected injury" as a foreseeable injury would have the effect of unduly limiting coverage under a liability insurance policy since foreseeability is generally an essential element in establishing liability. In Grange Mutual Cas. Co. v. Thomas, 301 So. 2d 158 (Fla. App. 1974), an insurance company attempted to persuade the court that an "expected" injury means an injury which "naturally and foreseeably flow[s] * * * from a wilful act." In rejecting such an interpretation, the court stated (301 So. 2d 159):

"* * * [I]f we were to give the exclusion before us the meaning argued by appellant, then, by a parity of reasoning, we would *have to exclude any injury from an unintentional tort* which a given jury might categorize as being 'expected' depending upon the degree of likelihood thereof under the facts and circumstances of the case. Conceivably, indeed, this might include an injury resulting from simple negligence and, under Florida law, could well include an injury resulting from gross negligence." (Italics supplied in part.)

Therefore, we conclude that an "expected injury," as that term is used in an insurance exclusionary clause, cannot be equated with foreseeable injury.[3]

---

[3] Indeed, those courts which have interpreted the "expected or intended" injury exclusion have construed the term "expected" to mean a "high degree of certainty." State Farm Fire & Cas. Co. v. Muth, 190 Neb. 272, 207 N. W. 2d 364 (1973); Vanguard Ins. Co. v. Cantrell, 18 Ariz. App. 486, 503 P. 2d 962 (1972).

Even though we have concluded that the trial court's instructions on the meaning of the "expected or intended" injury exclusion were incorrect, the insureds are not entitled to a new trial. In Caspersen v. Webber, 298 Minn. 93, 99, 213 N. W. 2d 327, 330 (1973), we indicated that an injury is "expected or intended" from the standpoint of the insured if a reason for an insured's act is to inflict bodily injury *or* "when the character of the act is such than an intention to inflict an injury can be inferred" as a matter of law. See, Rankin v. Farmers Elev. Mutual Ins. Co. 393 F. 2d 718 (10 Cir. 1968). We find that the character of the insureds' acts in this case is such that an intention to inflict an injury can be inferred as a matter of law.[4] This is not a case like Caspersen where an impulsive, albeit intentional, act results in an unintended injury. The insured in Caspersen would never have pushed the hatcheck girl had he known beforehand that it would result in a serious injury to her. In contrast, the facts in the instant case compel the conclusion that the insureds followed through with the armed robbery with knowledge that someone might well be injured or killed in the process. The robbery was a well planned operation. The insureds knew that several of the participants would be carrying loaded guns. Ross had supplied two of these loaded guns and even instructed Toal that "all you got to do is pull the trigger." Toal had a reputation for being "good as a pistolman" and had practiced with a gun at a firing range before the robbery. In short, the insureds intentionally prepared themselves to inflict serious injury in order to facilitate the armed robbery. Thus, we find the insureds' acts to be of such a calculated and remorseless character that we infer an "inten-

---

[4] It should be noted that if there is an intention to injure, the exclusion applies regardless of whether the actual injury inflicted is more severe or even of a different nature than the injury intended. Thus, in Hartford Fire Ins. Co. v. Wagner, 296 Minn. 510, 207 N. W. 2d 354 (1973), we held that the intentional injury exclusion applied where the insured intentionally inflicted bodily injury, but did not intend to cause the death of the victim. Accord, Lumbermens Mutual Ins. Co. v. Blackburn, 477 P. 2d 62 (Okla. 1970).

tion to inflict an injury" as a matter of law.[5] The trial court's order for declaratory judgment is therefore affirmed.

Affirmed.

---

[5] Insureds also urge on this appeal that they are entitled to an award of (1) attorneys fees incurred in defending the wrongful death action brought by Mrs. Erickson, and (2) attorneys fees incurred in defending the declaratory judgment actions brought by their insurers. However, since we have determined that the injury caused by insureds was excluded under their insurance policies, the insurers did not erroneously deny their obligation to defend insureds. Therefore, insureds are not entitled to the attorneys fees incurred in the wrongful death action. Rent-A-Scooter, Inc. v. Universal Underwriters Ins. Co. 285 Minn. 264, 173 N. W. 2d 9 (1969). Similarly, since insureds did not successfully defend the declaratory judgment action, they are not entitled to an award of the attorneys fees incurred in that action. Security Mutual Cas. Co. v. Luthi, 303 Minn. 161, 226 N. W. 2d 878 (1975).