Math E. WOIDA, Appellant,

v.

NORTH STAR MUTUAL INSURANCE COMPANY, Respondent.

No. 51391.

Supreme Court of Minnesota,
En banc.

May 15, 1981.
Rehearing Denied June 24, 1981.

Kenneth E. Tilsen, St. Paul, for appellant.

Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, O. C. Adamson, II, and R. D. Blanchard, Minneapolis, for respondent.

PETERSON, Justice.

Plaintiff Matt Woida brought an action seeking a judgment declaring that defendant North Star Mutual Insurance Company owed a duty to defend him in a pending lawsuit. He also alleged that defendant had an obligation to indemnify him for any judgment rendered against him. The trial court denied plaintiff's motion for summary judgment and sua sponte granted summary judgment for defendant. Plaintiff now appeals from the order. We affirm.

Plaintiff is a named defendant in a civil suit brought by Allen Krook, who was shot while working as a security guard. On March 14, 1978, Krook was on duty with Mark Hedner, a Pope County sheriff, at a powerline construction site located near the town of Villard in rural Pope County. Both were seated in a Ford Bronco, with Krook in the driver's seat and Hedner in the passenger's seat. A vehicle drove onto the construction yard around midnight and stopped 40 to 50 yards from the Bronco. After the guards heard two gunshots, Krook opened his door, causing the dome light to go on. Several armor-piercing bullets were fired at the Bronco, shattering its windshield and causing metal fragments to strike Krook's face and chest.

In May 1978 plaintiff and others were charged by the state with aggravated criminal damage to property and conspiracy to commit aggravated criminal damage to

property. The criminal charges were based on information obtained in interviews with Harold and Ardys Fischer and Tamara and Darrell Bartos.[1] The information indicated that plaintiff had ridden with William Hansen and his two sons in Hansen's automobile to the home of Ardys and Harold Fischer on the night of March 14, 1978. Ardys Fischer told Bureau of Criminal Apprehension agents that she returned home from a meeting on March 14 to find her husband, Harold; her daughter and son-in-law, Tamara and Darrell Bartos; Darrell's brother, Anthony Bartos; plaintiff; and the three Hansens talking in the kitchen. She said that the men discussed going to the Villard construction site to "mess up" a crane and shoot at the guards' truck. She also stated that plaintiff and the Hansens encouraged the shooting.

The group later decided to leave for the construction site in a pickup truck owned by Darrell Bartos. Guns were transferred into the truck from the Hansen automobile. Darrell Bartos drove the truck, and plaintiff and Anthony Bartos rode in the front seat. The Hansens and Harold Fischer were in the back of the truck. In his statement to the investigating agent, Harold Fischer indicated that he thought that the group would have some fun "bugging the guards."

After arriving at the construction site, some members of the group shot at the equipment and the vehicle in which the guards were seated. Harold Fischer said later that the shots came from the back of the truck but that he could not remember who actually fired the shots. The group drove back to the Fischer residence after the shooting and immediately dispersed.

Allen Krook brought an action against plaintiff and the other men allegedly involved in the incident.[2] Krook's complaint alleged that the men fired the shots maliciously, intentionally, and/or with willful and wanton indifference for the safety of others. The complaint also asserted that the vandals' acts constituted a battery and that, as a result of the battery, Krook was entitled to compensatory damages of $50,000 and punitive damages of $50,000.

Plaintiff commenced this lawsuit alleging that defendant owed a duty to defend him pursuant to a "Farmers Liability Policy" issued by defendant. Plaintiff also sought an order declaring the obligation of defendant to pay any judgment for which he might become liable as well as costs, expenses, and attorneys fees. Defendant denied coverage under the policy, contending that plaintiff's actions did not fall within policy provisions for coverage due to an "occurrence," the result of which was unexpected and unintended from the standpoint of the insured.

Plaintiff brought a motion for summary judgment. The court denied plaintiff's motion and sua sponte granted defendant summary judgment. Plaintiff appeals, seeking a declaration that defendant has a duty to defend. Plaintiff also asks the court to determine that defendant must indemnify plaintiff or that the issue should be submitted to the jury for trial.

■ 1. The insurance policy covering plaintiff provides in pertinent part: "The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence * * *." An "occurrence" for

1. Copies of the interviews given by the Fischers and the Bartoses were presented to the trial court in this case. Plaintiff attached the statements of Harold Fischer and Darrell Bartos as exhibits to his memorandum in support of the motion for summary judgment. The statements of Ardys Fischer and Tamara Bartos were included in defendant's memorandum in opposition to the motion for summary judgment. Both parties have relied on the facts set forth in these statements in their briefs to this court.

2. The Krook lawsuit was commenced in Stearns County District Court. Venue was changed to Pope County since the incident took place in Pope County, and Krook and all defendants except Woida live in Pope County. Woida's declaratory judgment action remained in Stearns County.

purposes of the policy is defined as "[A]n accident, including continuous or repeated exposure to conditions which result in bodily injury or property damage neither expected nor intended from the standpoint of the insured." The purpose of an "intentional injury" exclusion, such as that found in plaintiff's policy, is to prevent extending to the insured a license to commit wanton and malicious acts. *Farmers Insurance Exchange v. Sipple*, 255 N.W.2d 373, 375 (Minn.1977).

Defendant contends that the shooting of Krook was "expected or intended" by plaintiff since there was an actual intent by the group of which plaintiff was a member to fire armor-piercing bullets into the occupied vehicle and the injuries suffered by Krook were a direct result of the shooting. Plaintiff argues, however, that defendant must show that there was a specific intent to injure in order for the exclusion to apply. He asserts that merely showing that the act was intentional is not sufficient to exclude coverage under the policy.

▮ The intentional injury exclusion does not relieve an insurer of liability unless the insured has acted with the intent to cause bodily injury. *Caspersen v. Webber*, 298 Minn. 93, 98–99, 213 N.W.2d 327, 330 (1973). The exclusion has no application when the act inflicting the assault and battery is intended but the resulting injury is not intended. *Brown v. State Automobile & Casualty Underwriters*, 293 N.W.2d 822, 824 (Minn.1980). However, if an intent to inflict injury is found, the exclusion applies regardless of whether the actual injury is more severe or of a different nature than the injury intended. *Iowa Kemper Insurance Co. v. Stone*, 269 N.W.2d 885, 887 (Minn.1978); *Hartford Fire Insurance Co. v. Wagner*, 296 Minn. 510, 511, 207 N.W.2d 354, 355 (1973). The intent may be established by proof of an actual intent to injure or when the character of an act is such that an intention to inflict injury can be inferred as a matter of law. *Farmers Insurance Exchange v. Sipple*, 255 N.W.2d at 376; *Caspersen v. Webber*, 298 Minn. at 99, 213 N.W.2d at 330.

Intent to injure was inferred by this court as a matter of law in *Iowa Kemper Insurance Co. v. Stone*, 269 N.W.2d at 887. In *Stone*, two teenagers agreed to a fight in order to settle a dispute. The insured wrapped his belt around his hand and struck the other teenager, causing serious injury. The trial court found that the insured's actions were sufficient to demonstrate an intent to cause bodily injury, and this conclusion was upheld on appeal.

We also held that intent to inflict injury could be inferred as a matter of law in *Continental Western Insurance Co. v. Toal*, 309 Minn. 169, 244 N.W.2d 121 (1976). In *Toal*, the insureds attempted an armed robbery at a bowling alley. Although they did not specifically intend to shoot anyone during the robbery, they did intend to threaten people with guns and use them if necessary. During the course of the robbery, one of the insureds shot and killed an employee. The employee's widow brought a wrongful death action against the participants on the theory of joint venture, and the insurers commenced a declaratory judgment action to determine their obligation to the insureds. We concluded that intent could be inferred from the insureds' actions since: the robbery was a well-planned operation; the insureds knew that the participants would be carrying loaded guns; one of the insureds had been hired as a "pistol man"; and the insureds followed through with the armed robbery with knowledge that someone might well be injured or killed in the process. *Id.* at 177–78, 244 N.W.2d at 126.

▮ In this case, as in *Toal*, intent to cause bodily injury can be inferred as a matter of law. The facts indicate that participants made plans at the Fischers' residence to drive to the Villard construction site and shoot at the truck in which the guards were sitting. They armed themselves with high-powered rifles which had been loaded with armor-piercing bullets. The men knew that the guards' truck was occupied at the time the shots were fired, since the dome light and headlights of the truck had gone on. Yet, they proceeded to fire through the windshield of the vehicle

knowing that someone could be seriously injured. We find that these actions are of such a calculated nature that we can infer an intention to inflict injury as a matter of law.

■■■ 2. Since intent to cause bodily injury can be inferred as a matter of law, there is no duty owed by defendant to indemnify plaintiff. *Iowa Kemper Insurance Co. v. Stone*, 269 N.W.2d 885 (1978); *Continental Western Insurance Co. v. Toal*, 309 Minn. 169, 244 N.W.2d 121 (1976). When it can be concluded as a matter of law that there is no basis upon which an insurer may be obligated to indemnify the insured, the insurer is relieved of its duty to defend. *Penn Aluminum, Inc. v. Aetna Casualty & Surety Co.*, 61 App.Div.2d 1119, 402 N.Y.S.2d 877, 878 (1978); 7C J. Appleman, *Insurance Law and Practice* § 4684.01 (Supp.1980). Defendant, therefore, owes no duty to defend plaintiff as coverage has been declared excluded. *See Iowa Kemper Insurance Co. v. Stone*, 269 N.W.2d at 887–88. The trial court's order granting summary judgment is accordingly affirmed.

Affirmed.