667 F.2d 714
 9 Fed. R. Evid. Serv. 1369
 AUTO-OWNERS INSURANCE COMPANY, Appellant,
v.
Wayne JENSEN, d/b/a Jensen Bridge Maintenance;
Corwin-Churchill Motors, Inc.; Century Motors,
Inc.; V. P. Building Fund; and Charles
A. Butz, Jr., Appellees.
 No. 81-1265.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Oct. 16, 1981.
Decided Dec. 29, 1981.
 
 1
 Leonard H. Bucklin (argued), Zuger & Bucklin, Bismarck, N.D., for appellant.
 
 
 2
 Patrick R. Morley (argued), O'Grady & Morley, Grand Forks, N.D., for appellee Charles A. Butz, Jr.
 
 
 3
 Before LAY, Chief Judge, McMILLIAN, Circuit Judge, and HUNTER,* Senior District Judge.
 
 
 4
 ELMO B. HUNTER, Senior District Judge.
 
 
 5
 This is an appeal from the judgment of the district court declaring that the appellant, Auto-Owners Insurance Company, had a duty to defend appellee, Charles A. Butz, Jr., under the terms of its Comprehensive Commercial Policy for all claims arising out of the painting of a highway bridge, and that the appellant could not apply a deductible to claims arising out of the painting of the bridge. We reverse in part, affirm in part, and remand for a new trial.
 
 
 6
 In 1977 the Sornsin Construction Company contracted with the State of North Dakota to paint and repair a highway bridge across the Missouri River between Bismarck, South Dakota, and Mandan, North Dakota. Sornsin in turn subcontracted the work of sandblasting and painting the bridge to Jensen Bridge Maintenance. Jensen employed the appellee to do the actual painting of the bridge. Prior to commencing the painting, the appellee made inquiry through an independent insurance agent about obtaining comprehensive business liability insurance. Ultimately, the appellant issued its Comprehensive Commercial Policy to the appellee, effective August 3, 1977, to August 8, 1978.
 
 
 7
 On September 19, 1977, the appellee began spray painting the bridge with a tung oil base spray paint. The physical characteristics of this paint caused it to be slow drying and of such composition that it floated easily on air currents. Use of this type of paint was required by the State. On October 13, 1977, spray paint drifting from the bridge caused damage to numerous automobiles parked in the vicinity of the bridge. As a result of this damage various claims were filed against the appellee in state court. The appellant, under a reservation of rights, undertook the defense of those suits and thereafter filed this action for declaratory judgment in the district court pursuant to 28 U.S.C. 2201. Essentially, the appellant sought a declaration that the appellee was not afforded coverage under the policy because the damages incurred were expected from the standpoint of the appellee and therefore excludable from coverage under the policy. Alternatively, the appellant sought a declaration that if the appellee was afforded coverage under the policy it was subject to a deductible amount set forth in the policy.
 
 
 8
 This action was tried to a jury and the issues were submitted to them in the form of a special verdict. F.R.Civ.P., Rule 40(a). After the jury returned its special verdict resolving the issues in favor of the appellee, the trial judge entered findings of fact, in accordance with the special verdict, and conclusions of law. Judgment was entered for the appellee.
 
 
 9
 The parties agree that Minnesota substantive law governs the policy of insurance at issue in this action.
 
 
 10
 Generally, where there is no dispute of fact the interpretation and construction of an insurance policy is a matter of law for the trial court to determine. Iowa Kemper Insurance Co. v. Stone, 269 N.W.2d 885, 887 (Minn.1978); St. Paul Fire & Marine Insurance Co. v. Lenzmeier, 309 Minn. 134, 243 N.W.2d 153, 154 (1976); Midway Center Associates v. Midway Center, Inc., 306 Minn. 352, 237 N.W.2d 76, 78 (1975); Associated Independent Dealers, Inc. v. Mutual Service Insurance Companies, 304 Minn. 179, 229 N.W.2d 516, 519 (1976). However, where questions of fact remain, it is the function of the trial court to instruct the jury as to the meaning of terms in an insurance policy so the jury may make the relevant determinations of fact. Farmers Insurance Exchange v. Sipple, 255 N.W.2d 373 (Minn.1975)[1]; Honeymead Products Co. v. Aetna Casualty & Surety Co., 275 Minn. 182, 146 N.W.2d 522, 529 (1966). See also Continental Western Insurance Co. v. Toal, 309 Minn. 169, 244 N.W.2d 121 (1976); Boedigheimer v. Taylor, 287 Minn. 323, 178 N.W.2d 610 (1970). Such was the procedure followed in this case. The district court instructed the jury regarding the meaning of the policy terms and then submitted to them the questions of fact. That this action is one for declaratory judgment does not affect this procedure. Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959); F.R.Civ.P., Rule 57.
 
 
 11
 I. The Instruction's Definition of "Expected"
 
 
 12
 The insurance policy between the parties specifically excluded coverage for damages which were expected or intended from the standpoint of the insured. At trial the appellant asserted that any damages suffered by claimants were expected and therefore excludable from coverage under the policy. The district court instructed the jury on the meaning of the term "expected" and then submitted that issue to the jury.[2]
 
 
 13
 The appellant's first assignment of error is that the district court's instruction to the jury incorrectly defined the meaning of the term "expected" as it was used in the exclusionary clause of the policy.
 
 
 14
 Essentially, the district court instructed the jury that damages were unexpected, and thus covered by the insurance policy, even if the insured acted negligently.[3] The issue before us is how the term "expected" should have been defined.
 
 
 15
 We have neither been directed to nor independently discovered any Minnesota cases which directly control the issue presented here. The Minnesota cases which have dealt with the phrase expected or intended have concentrated on the meaning of the word intended, indicating injury is intended from the standpoint of the insured if a reason for the insured's act is to inflict injury or where the character of the act is such that an intention to inflict injury can be inferred as a matter of law. Woida v. North Star Mutual Insurance Co., 306 N.W.2d 570, 573 (Minn.1981); Continental Western Insurance Co. v. Toal, supra, 244 N.W.2d at 125; Caspersen v. Webber, 298 Minn. 93, 213 N.W.2d 327, 330 (1973); Iowa Kemper Insurance Co. v. Stone, supra, at 887. Many of these cases dealt with a factual incidence of assault and battery. None of them specifically defines the term "expected."
 
 
 16
 In arguing that the district court's definition of the term "expected" was correct, the appellee relies primarily on the three Minnesota cases of Ohio Casualty Insurance Co. v. Terrace Enterprises, Inc., 260 N.W.2d 450 (Minn.1978); Johnson v. Aid Insurance Co. 287 N.W.2d 663 (Minn.1980); and Bituminous Casualty Corp. v. Bartlett, 307 Minn. 72, 240 N.W.2d 310 (1976). All three of these cases considered an insurance policy clause excluding expected or intended damages. However, they do not provide conclusive guidance.
 
 
 17
 In Ohio Casualty Insurance Co. v. Terrace Enterprises, Inc., supra, the insured was warned that certain soil conditions might result in damage to a construction project. In light of this warning the insured took various precautions to prevent the damage. These precautions failed and the damage did indeed result. The court found that the insured's conduct in this case was perhaps negligent, but not reckless or intentional, and thus was not expected for purposes of the exclusionary clause. Id. at 452-53. The court did not go so far as to specifically hold the negligent acts of an insured cannot, as a matter of law, result in damages which are expected. It is unclear whether the court concluded that the insured acted negligently and the court did not define the meaning of the term "expected."
 
 
 18
 The cases of Johnson v. Aid Insurance Co., supra, and Bituminous Casualty Corp. v. Bartlett, supra, are clearly different from the case at bar. The Minnesota Supreme Court held in those cases that an insured's willful and knowing violations of a construction contract's specifications and expected standards of workmanship did result in damages which were expected. Both of these cases involved knowing and willful actions, issues not present in this case.
 
 
 19
 Again, although the court held the particular actions involved in those cases fell within the parameters of expected damages, no effort was made to define the parameters of the term "expected" as used in insurance policy exclusionary clauses.
 
 
 20
 Since it is not the task of this Court to "formulate the legal mind of the state, but merely to ascertain and apply it," Village of Brooten v. Cudahy Packing Co., 291 F.2d 284, 288 (8th Cir. 1961), we have the usual problem of endeavoring to determine what the Supreme Court of Minnesota would, on the facts presented to us, declare the law of the state to be.
 
 
 21
 We are guided by certain broad principles of Minnesota law which govern the construction of insurance policies. Generally, unambiguous words and terms used in insurance policies are to be given their natural and ordinary meaning taken in their popular sense, giving effect to the purposes of the document as a whole. Boedigheimer v. Taylor, 287 Minn. 323, 178 N.W.2d 610, 613 (1970). If ambiguous words or terms appear in the policy, their meaning should be resolved in favor of the insured. Bituminous Casualty Corp. v. Bartlett, supra, 240 N.W.2d at 312.
 
 
 22
 We find the district court's instruction that if the damage to the automobiles resulted from the negligence of the insured then the damages could not be expected is an incorrect definition of the term "expected."
 
 
 23
 We have considered the definition of the term "expected" under Iowa law. City of Carter Lake v. Aetna Casualty and Surety Co., 604 F.2d 1052 (8th Cir. 1979). There we rejected the argument that a result is expected merely because it is reasonably foreseeable.
 
 
 24
 The reasonable expectation of an insured in securing a comprehensive general liability policy is that it will cover some negligent acts. This is consistent with Minnesota's interpretation of such policies.[4] However, it does not follow that because some negligent acts are covered by such policies, all negligent acts are covered.[5] There may be instances when, although the insured was negligent in his actions, he knew or should have known that resulting damage was expected. To mandate that damages cannot be expected if the actor is negligent results in a meaning of the term expected that is too narrow. As we held in City of Carter Lake :For the purposes of an exclusionary clause in an insurance policy the word "expected" denotes that the actor knew or should have known that there was a substantial probability that certain consequences will result from his actions ... The results cease to be expected and coverage is present as the probability that the consequences will follow decreases and becomes less than a substantial probability.
 
 
 25
 At 604 F.2d 1058-59.
 
 
 26
 We went on to note the difference between reasonably foreseeable and substantially probable is one of degree of expectability. A result is reasonably foreseeable if there are indications which would lead a prudent man to conclude that particular results could follow from his actions. A result is substantially probable if the indications are strong enough to lead the prudent man to conclude that not only is there a possibility of the results occurring, but they are highly likely to occur. Minnesota courts have noted that this is the usual way to interpret the meaning of the term "expected."[6]
 
 
 27
 Since the instruction given required the jury to find in favor of the appellee if he were negligent, even though he may have expected the damages, we find its effect to be prejudicial.
 
 
 28
 From our review of the record we cannot conclude, as a matter of law, that the appellee expected the damages to occur. This issue involves the resolution of questions of fact. We must therefore remand this action for a new trial.
 
 II. Other Instruction Questions
 
 29
 The appellant also complains of other instructions given to the jury. First, the district court erroneously instructed the jury that the appellant has the burden to show that the appellee was not covered under the terms of the insurance policy. The appellant admits that if the policy language in question[7] is an exclusion of coverage rather than a limitation of liability then it does have the burden to prove the applicability of the exclusion. It argues, however, that the language in the policy is a limitation of liability, and, as such, the burden is on the appellee to show coverage exists. We disagree.
 
 
 30
 The Minnesota cases which have considered this or similar policy language have consistently referred to it as an exclusionary clause. Woida v. North Star Mutual Insurance Co., supra, at 573; Continental Western Insurance Co. v. Toal, supra, 244 N.W.2d at 125; Caspersen v. Webber, supra, 213 N.W.2d at 330; Iowa Kemper Insurance Co. v. Stone, supra, at 887. In light of this authority, the district court correctly construed the language as an exclusion and instructed the jury appropriately.
 
 
 31
 Secondly, the appellant argues the district court erroneously instructed the jury on the doctrine of reasonable expectations.[8]
 
 
 32
 The appellant's argument is essentially two-fold. First, that the doctrine of reasonable expectations is not the law of Minnesota, and, secondly, that even if it is, the instruction was improper because the doctrine is a legal theory of insurance policy construction, an area outside the province of the jury.
 
 
 33
 The doctrine of reasonable expectations is that when ambiguities exist in an insurance policy they are to be resolved in accordance with the reasonable expectations of the insured. Wilson v. Insurance Company of North America, 453 F.Supp. 732 (N.D.Cal.1978); Handal v. American Farmers Mutual Casualty Co., 79 Wis.2d 67, 255 N.W.2d 903 (1977); Mills v. Agrichemical Aviation Inc., 250 N.W.2d 663 (N.D.1977); Rodman v. State Farm Mutual Automobile Insurance Co., 208 N.W.2d 903 (Iowa 1973). The Minnesota courts have adopted this position. Columbia Heights Motors v. Allstate Insurance Co., 275 N.W.2d 32, 36 (Minn.1979); Caledonia Community Hospital v. St. Paul Fire & Marine Insurance Co., 307 Minn. 352, 239 N.W.2d 768, 770 (1976). This is in accord with the strong policy of Minnesota to extend coverage rather than allowing coverage to be restricted by confusing or ambiguous language. Hennen v. St. Paul Mercury Insurance Co., 312 Minn. 131, 250 N.W.2d 840, 844 (1977). However, the Minnesota courts have not gone so far as to extend the doctrine to cases which do not involve ambiguities in the terms of the policy.[9]
 
 
 34
 Even though Minnesota embraces the doctrine of reasonable expectations we find it was improper to instruct the jury in this regard. First, the doctrine only applies to situations where an ambiguity exists in the insurance policy. Secondly, if such an ambiguity exists, then the doctrine is used as a rule of construction to be applied by the court to the insurance policy. Columbia Heights Motors v. Allstate Insurance Co., supra, at 36; Caledonia Community Hospital v. St. Paul Fire & Marine Insurance Co., supra 239 N.W.2d at 770.[10] In such cases the court should resolve ambiguities and instruct the jury accordingly so they may make the appropriate factual determinations. See Farmers Insurance Exchange v. Sipple, supra.
 
 
 35
 Third, the appellant argues that special verdict questions Nos. 7 and 8, and the jury instruction regarding the estoppel of the appellant were improperly submitted to the jury because there was a lack of evidence on the record to support these issues. Because this case is being remanded for a new trial on other grounds, this issue need not be addressed by the Court. Whether these issues should be submitted to the jury on remand depends wholly on the evidence developed at the new trial.
 
 
 36
 Finally, the appellant argues the district court erred in instructing the jury on abstract legal theories. Specifically, it complains of the instructions regarding interpretation of an insurance policy, that the policy is to be construed as a whole, and that interpretations should be made in favor of insurance coverage.
 
 
 37
 As previously noted, the construction of an insurance contract is a matter of law for the court to decide, not a question for the jury. The instructions complained of are rules of construction. They do not aid the jury in making factual determinations, and therefore should not have been given. See Otten v. Stonewall Insurance Co., 511 F.2d 143 (8th Cir. 1975) (interpreting Minnesota law).III. The Mentioning of Children
 
 
 38
 The appellant next alleges the district court erred by allowing the appellee to testify he had three children and what their ages were. The district court ruled this testimony went to the identity of the appellee. The appellant argues that it was irrelevant and improperly evoked the sympathy of the jury. This single reference to the appellee's family made during his direct testimony was the only reference in the course of this four-day trial to the fact the appellee had a family. The record does not reflect any effort on the part of the appellee to capitalize upon this single reference by attempting to elicit the sympathy of the jury. The jury was instructed that it should not be influenced by any personal feelings of sympathy for or prejudice against any party.
 
 
 39
 It is the rule of this Court that a trial court's ruling on the admissibility of evidence will not be disturbed absent a clear and prejudicial abuse of discretion. Wade v. Haynes, 663 F.2d 778 (8th Cir. 1981); E.I. DuPont DeNemours v. Berkley & Co., Inc., 620 F.2d 1247, 1272 (8th Cir. 1980).
 
 
 40
 From our review of the record and the circumstances in which this evidence was admitted we do not find its admission to be a clear and prejudicial abuse of the district court's discretion.[11]
 
 IV. Admissions Against Interest
 
 41
 The appellant next claims a recorded statement of the appellee, offered as substantive evidence of the admission of a party opponent pursuant to F.R.E., Rule 801(d)(2)(A), was improperly excluded.[12]
 
 
 42
 After receiving notice that the appellee was submitting insurance claims for coverage under the policy the appellant retained the services of an independent adjusting firm in the city where the appellee lived. The independent adjuster interviewed the appellee regarding the damage claims he was filing and with the consent of the appellee, electronically recorded the statement. When the recorded statement was offered as evidence of an admission of a party opponent, the district court refused to admit the evidence on the grounds it was not subject to cross-examination at the time made.
 
 
 43
 For statements of a party to be admissible, there is no requirement they be subject to cross-examination at the time made. 4 Weinstein's Evidence 801(d) (2)(01) (1979); 4 Wigmore, Evidence 1048, n. 8 (3d ed. 1940). Rule 801(d)(2)(A) is in accord with the traditional rule that admissions of a party opponent are admitted as substantive evidence of the fact stated. United States v. Cline, 570 F.2d 731 (8th Cir. 1978).
 
 
 44
 There is little doubt the recorded statements of the appellee can be construed as admissions. An admission must be offered against a party, not for him, Coughlin v. Capitol Cement Co., 571 F.2d 290, 306 (5th Cir. 1978), although the statement need not have been against the party's interest at the time it was made. United States v. Rios Ruiz, 579 F.2d 670, 676 (1st Cir. 1978). An admission must be contrary to a party's position at trial. Butler v. Southern Pacific Co., 431 F.2d 77, 80 (5th Cir. 1970).
 
 
 45
 At trial the appellee testified he did not have any knowledge the paint used on the bridge would stay in a liquid form in the air. Contrary to this testimony, his prior recorded statement indicated he knew the tung oil, the base used for the paint, would not dry for some time and the aluminum material in the paint caused it to be very light and carry on air currents. The appellee also testified at trial that he had not discussed stopping the spray painting and beginning to brush paint. However, his recorded statement indicated changing to brush painting had been considered and rejected for purposes of expediency.
 
 
 46
 In these instances, the prior recorded statements were contrary to the appellee's position at trial and should have been admitted as substantive evidence.
 
 V. The Deductible Clause
 
 47
 The appellant's last argument is even if coverage existed under the policy, it was subject to a deductible of $100.00 for each individual claim of damage.
 
 
 48
 The facts relevant to this issue are easily summarized. It is undisputed the policy issued to the appellee contains the deductible clause. The clause is unambiguous on its face. The policy was delivered to the appellee on November 14, 1977, some time after the damage had occurred. When the appellee sought insurance coverage he was issued a binder of insurance on August 5, 1977, by an independent insurance agent. That binder did not contain a reference to the deductible. The record contains evidence that it was normal, customary and usual for all of the appellant's commercial comprehensive insurance policies to have a deductible in some amount.
 
 
 49
 The district court posed to the jury the question of whether the appellee had reasonably expected his insurance coverage to be subject to a deductible. Upon receiving an answer in the negative, the district court found the coverage was not subject to a deductible.
 
 
 50
 We disagree with the method used by the court in reaching this conclusion.
 
 
 51
 The general rule established long ago in Minnesota, and consistent with the rule in other jurisdictions[13], is that insurance created by a binder is controlled by and subject to the terms and conditions of policies ordinarily issued by the insurance company for similar risks. Salisbury v. Hekla Fire Insurance Co., 32 Minn. 458, 21 N.W. 552 (1884).
 
 
 52
 However, if the agent issuing the insurance policy has the authority, actual or apparent, to alter the usual terms of the policy, the insurer should be bound by such alteration. Morrison v. Swenson, 274 Minn. 127, 142 N.W.2d 640 (1966); see also Salisbury v. Hekla Fire Insurance Co., supra, 21 N.W. at 553.
 
 
 53
 The insurance policy issued by the appellant clearly contained a deductible clause which the evidence indicates was an ordinary term in its policies issued for risks of this type. For the deductible to be held inoperative on this record, it must be shown first that the issuing agent was acting as an agent for the appellant with the authority, actual or apparent, to alter the terms of the appellant's ordinary policy, and, secondly, the issuing agent and the appellee agreed to alter the terms of the policy by excluding the deductible clause.
 
 
 54
 The scope of the agent's authority to act on behalf of the insurer is a question of fact to be determined by the evidence. Automated Systems v. National Indemnity Co., 269 N.W.2d 749, 752 (Minn.1978). (See this case for a discussion of the factors relevant to a determination of the scope of authority.)
 
 
 55
 On remand the district court should determine the validity of the deductible in accordance with the guidelines set forth above.
 
 
 56
 For the above reasons, this action is remanded to the district court for a new trial in accordance with this opinion.
 
 
 
 *
 Elmo B. Hunter, Senior District Judge, Western District of Missouri, sitting by designation
 
 
 [1]
 In Farmers Insurance Exchange the court held in a declaratory judgment action where facts are in dispute it is proper to submit to the jury the issue of whether the damage was either expected or intended from the standpoint of the insured. This same issue was faced by the district court below
 
 
 [2]
 The parties agree that in determining whether the damages were expected under the terms of the policy the appropriate standard to be applied is an objective one, i.e., whether a reasonable man in the position of the insured would have expected the damage to occur
 
 
 [3]
 The instruction read:
 It is the duty of the Court to define the provisions in the policy of insurance and it is the duty of the jury to accept that definition and apply it to the evidence of this case.
 The definition of "property damage neither expected nor intended from the standpoint of the insured," which you must follow, is:
 Property damage neither expected nor intended from the standpoint of the insured does not include damage caused through intentional or reckless acts of the insured. Thus, if the insured either intentionally or recklessly causes damage to the property of another, there is not coverage for this under the insurance policy.
 However, if the insured exercises reasonable precautions to protect or prevent the damage from occurring, and in spite of such precautions, the damage does occur, the conduct of the insured is not intentional or reckless and there is coverage under the policy unless some other exclusion or coverage limitation applies.
 If property damage occurs because of a mistake, carelessness, or negligence on the part of the contractor or his employees, the property damage is not expected or intended from the standpoint of the insured.
 If the insured is not aware that the property damage is occurring, it is neither expected nor intended from the standpoint of the insured.
 If property damage of the type alleged in this case was merely foreseen as being possible, such property damage was neither expected nor intended from the standpoint of the insured.
 In considering whether the property damage was "neither expected nor intended from the standpoint of the insured," you are entitled to consider as one factor whether the insured followed the contract specifications for the painting. If you find that the insured followed contract specifications for the painting of the bridge, this may be considered by you as evidence that the property damage was "neither expected nor intended from the standpoint of the insured."
 If you find that the insured took reasonable precautions to prevent property damage, but which failed to prevent the property damage, you must find that such property damage was "neither expected nor intended from the standpoint of the insured," and that there is coverage for the property damage under the Auto-Owners Insurance Policy.
 Damage is "neither expected nor intended from the standpoint of the insured" unless the property damaged for which legal claims have been brought was expected or intended to be damaged from the standpoint of Charles A. Butz, Jr., thinking and acting as a reasonable man.
 
 
 [4]
 The general purpose of these policies is to protect the insured from fortuitous losses occurring in connection with the contractor's work. However, an insurer providing coverage of this nature can set premiums properly only if the losses incurred are uncertain from the standpoint of any individual policyholder. Bituminous Casualty Corp. v. Bartlett, supra, 240 N.W.2d at 313
 
 
 [5]
 While Minnesota courts have alluded to the fact that ordinarily negligence does not necessarily exclude coverage, Johnson v. Aid Insurance Co., supra, at 665, n.2, (Minn.1980); Larsen v. General Casualty Co., 99 F.Supp. 300 (D.Minn.1951) aff'd 196 F.2d 170 (8th Cir. 1952), they have not held the ordinary negligence of the insured mandates coverage by such policies
 
 
 [6]
 See Continental Western Insurance Co. v. Toal, supra, 244 N.W.2d at 125, n.3
 
 
 [7]
 The relevant language of the policy states:
 To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law, or assumed by him under the contract as defined herein, for damages because of
 A. bodily injury or
 B. property damage
 neither expected nor intended from the standpoint of the insured.
 
 
 [8]
 The jury was instructed that:
 The insured has a right to rely upon reasonably anticipated coverage and should not be subject to hidden pitfalls in the insurance contract. It is reasonable for a buyer of insurance to expect that when he buys and pays for a "COMPREHENSIVE COMMERCIAL POLICY" covering his business, that such insurance will cover liability arising out of his normal business operations unless excluded operations are called to his attention. It is the duty of the insurer to bring to the attention of the insured all provisions and conditions which create exceptions or limitations on the coverage.
 If the insured reasonably expects that his normal business operations will be covered, and the insurer or its agents have not brought to the attention of the insured those provisions or conditions which create exceptions or limitations on that coverage, the insured's reasonable expectation of coverage should be given effect.
 
 
 [9]
 Although some states have extended the doctrine to all questions of insurance coverage, whether or not ambiguities exist or not, see Corgatelli v. Globe Life Ins. Co., 96 Idaho 616, 533 P.2d 737 (1975), this extension appears to be the minority view
 
 
 [10]
 The cases cited by the appellee in favor of using the doctrine refer to it as a rule of construction to be applied by the court. See Dairyland Insurance Co. v. Esterling, 205 Neb. 750, 290 N.W.2d 209, 211 (1980); Fischer v. Massachusetts Casualty Ins. Co., 458 F.Supp. 939 (S.D.N.Y.1978); Commercial Union Assurance Co. v. Aetna Casualty & Surety Co., 455 F.Supp. 1190 (D.N.H.1978); Rodman v. State Farm Mutual Automobile Ins. Co., 208 N.W.2d 903 (Iowa 1973)
 
 
 [11]
 Although the appellant claims evidence of the appellee's family status was erroneously admitted, it later attempted to introduce into evidence a recorded statement of the appellee which contained the same information
 
 
 [12]
 The appellant was allowed to use the statement on cross-examination for purposes of impeachment and also was allowed to refer to the statement in its closing argument
 
 
 [13]
 State Auto. Mutual Ins. Co. v. Babcock, 54 Mich.App. 194, 220 N.W.2d 717 (1974); Robinson v. State Farm Mutual Auto Ins. Co., 188 Neb. 470, 197 N.W.2d 396 (1972); Republic Ins. Co. v. French, 180 F.2d 796 (10th Cir. 1950)