**AMERICAN FAMILY MUTUAL INSURANCE COMPANY,**
Appellant,

v.

**Stephen O'Dean PETERSON,**
**Petitioner, Respondent,**

**Lana L. Kelsey, Respondent.**
**No. C8–85–1187.**

Supreme Court of Minnesota.

May 8, 1987.

Jeffrey Hanson and Laurie J. Miller, Rochester, for Stephen O'Dean Peterson.

Steven S. Fuller, Rochester, for Lana L. Kelsey.

Frederic N. Brown, Thomas P. Kelly, Daniel F. Ruffalo, Rochester, for American Family Mut. Ins. Co.

SIMONETT, Justice.

This appeal involves the intentional act exclusion of a homeowner's liability policy, and whether an insured may use his voluntary intoxication to establish he lacked the capacity, during an assault, to form an intent to injure the person he assaulted. We construe the policy language not to allow voluntary intoxication to be so used, and we reverse the judgment finding insurance coverage for the insured's assault.

On August 28, 1981, Stephen Peterson was in his girlfriend's apartment with the landlady.[1] He asked the landlady, Lana Kelsey, if he might buy the stove and refrigerator, but she said the items were not for sale. Peterson, who had up to then been acting normally, started to walk out of the kitchen but then returned inside, picked up a hammer, and, for no apparent reason, struck Kelsey on the head with the hammer. Kelsey slumped to the floor, where, for the next 10 minutes or so, Peterson terrorized her. Several times, Peterson, with raised hammer, told Kelsey, "I could kill you." Eventually, Peterson gave Kelsey a rag to staunch the flow of blood and called an ambulance. He then ran off, but not before smashing things on the kitchen counter with the hammer in a fit of anger. Peterson subsequently pled guilty to second degree assault. Lana Kelsey testified, "When he popped me with the hammer he didn't appear upset or angry or anything. He just did it and we were both startled by it."

Lana Kelsey commenced suit against Peterson for her injuries. Peterson tendered defense of the negligence count to his homeowner's insurance carrier, American Family Mutual Insurance Company.

---

1. For a more detailed account of Peterson's activities and behavior on August 28, 1981, preceding and during the time he was in the apartment, see the court of appeals opinion. *American Family Mutual Insurance Co. v. Peterson,* 393 N.W.2d 212 (Minn.App.1986).

American Family took the position it had no coverage because the insured's attack on the landlady was excluded by the intentional act exclusion of its policy. To establish lack of coverage, plaintiff American Family commenced this declaratory judgment action, naming as defendants Peterson and Kelsey. Defendants took the position that while Peterson did, in fact, attack Kelsey, Peterson was so intoxicated that he lacked the intent required for the policy exclusion to apply, namely, he lacked an intent to do bodily injury to Kelsey.

At trial, it was established that Peterson was a confirmed alcoholic, customarily drinking 1 to 2 quarts of whiskey a day. There was evidence from which the jury could have found that on August 28 Peterson began drinking in the morning at a Minneapolis bar, went home, and then drove from Minneapolis to Rochester (a 2–hour drive) to the girlfriend's apartment, having over this period of time consumed 2 to 3 quarts of whiskey. At trial, Peterson testified he had little, if any, independent recollection of what had occurred that day. As to what he did recall, he did not know if these were his own recollections or events he had learned about from reading Lana Kelsey's discovery deposition. There was expert testimony that alcoholics who suffer blackouts often mask their memory loss by using information picked up from other sources as their own recollection. Peterson had a history of alcoholic blackouts and also a history of reacting with anger if frustrated while drunk.

Peterson's expert, a certified chemical dependency practitioner, testified that Peterson was in a state of intoxication at the time of the Kelsey incident and in a blackout stage; and the expert concluded, "I don't believe that he had any personal intention of hurting the landlady and that he reacted to whatever was going on." The insurer's expert, a psychiatrist, was of the opinion that Peterson, notwithstanding his intoxication, intended to strike and injure the landlady.

The jury was asked: "Did defendant Stephen Peterson intend to cause injury to Lana Kelsey when he struck her with the hammer?" The jury answered, "No." [2] The court of appeals reversed the judgment favoring defendants and remanded for a new trial, holding that the jury instructions and the special verdict question should have specifically focused on whether Peterson lacked the mental capacity to form an intent to cause injury during the Kelsey episode. But for Peterson's intoxication, the court of appeals stated, Peterson's attack on Kelsey would have compelled an inference that he intended to injure Kelsey. Therefore, reasoned the court of appeals, the appropriate issue for the jury was not whether the insured intended to injure the landlady but the threshold issue whether he even had the capacity to form such an intent.

American Family and Peterson petitioned this court for further review, and their petitions were granted. American Family claims Peterson's hammer assault, as a matter of law, regardless of intoxication, fits within the intentional act exclusion. On the other hand, Peterson and Kelsey maintain the issue of intent was properly submitted to the jury, but if there was any defect in the submission, it was harmless because the jury understood lack of capacity to be the real issue and the evidence amply sustains a finding of lack of capacity.

1. There are assaults by an insured where reason and commonsense require, from the very nature of the act, an inference that the insured intended his assault to injure the claimant. In such cases, the insured will not be heard to say he did not

**2.** The jury was further asked if Peterson intended to cause injury to Lana Kelsey during the events which occurred after he struck her with the hammer. The jury answered this question "no" also. The court of appeals ruled this second question should not have been given because Kelsey admittedly sustained no bodily injury from events separate from and subsequent

to the hammer blow. *See Clemens v. Wilcox,* 392 N.W.2d 863 (Minn.1986). It is unclear if defendant-respondents contest this ruling before us, but, in any event, because of our disposition of the issue raised in the first special verdict question, the issues raised in the second question are moot.

intend to hurt the person; rather, it will be held as a matter of law that the conduct comes within the intentional act exclusion of a liability policy.[3] Ordinarily, an insured who hits another person on the head with a hammer comes within this class of cases.[4]

On the other hand, there may be seemingly intentional assaults where the circumstances nevertheless permit the trier of fact to infer that the insured did not intend his assaultive conduct to cause injury. This inference may arise where the insured's actions are more in the nature of an instinctive reflex or a sudden impulsive defensive reaction to a provocative situation.[5] In these instances, a distinction is made between an intent to commit the act and an intent to injure, and the trier of fact may find the latter intent to be lacking. Peterson's conduct, as the court of appeals correctly pointed out, does not fit into this category.

Peterson claims, instead, that his hammer assault was not an intentional act be-cause he was then incapable of forming any kind of an intent, whether to commit the act or to cause injury to his victim. In the criminal law, for example, when specific intent is an essential element of a crime, "the fact of intoxication may be taken into consideration in determining such intent." Minn.Stat. § 609.075 (1986). Courts from several jurisdictions have also held voluntary intoxication is admissible in insurance coverage cases on the issue whether the insured is capable of forming an intent to injure. *See Parkinson v. Farmers Insurance Co.*, 122 Ariz. 343, 594 P.2d 1039, 1041 (Ariz.App.1979); *MacKinnon v. Hanover Insurance Co.*, 124 N.H. 456, 471 A.2d 1166, 1169 (1984); *Burd v. Sussex Mutual Insurance Co.*, 56 N.J. 383, 399, 267 A.2d 7, 15 (1970); *Nettles v. Evans*, 303 So.2d 306, 309 (La.Ct.App.1974); *U.S.F. & G. Insurance Co. v. Brannan*, 22 Wash. App. 341, 349, 589 P.2d 817, 822 (1979) ("intoxication must have destroyed a person's mental capacity in order to prevent

---

**3.** *See Woida v. North Star Mutual Insurance Co.*, 306 N.W.2d 570 (Minn.1981) (when persons planned to drive to a construction site and shoot at the guard's truck and did so knowing the truck was occupied, an intent to injure the guards could be inferred as a matter of law); *Iowa Kemper Insurance Co. v. Stone*, 269 N.W.2d 885 (Minn.1978) (an insured teenager who, with his belt wrapped around his fist, engages in a fight with another teenage boy to "settle things," comes within the intentional act exclusion); *Continental Western Insurance Co. v. Toal*, 309 Minn. 169, 244 N.W.2d 121, 126 (1976) (insureds planned a robbery knowing several of the participants would be armed and a person was shot during the robbery. Although insureds claimed that they did not intend to harm anyone, we held the insureds' conduct was "of such a calculated and remorseless character that we infer an 'intention to inflict an injury' as a matter of law").

**4.** There is another class of insurance coverage cases, those involving nonconsensual sexual contact, where this court infers intent to harm the victim as a matter of law. The insured's subjective view that his sexual overtures were not harmful is deemed irrelevant. *See, e.g., State Farm Fire & Casualty Co. v. Williams*, 355 N.W.2d 421 (Minn.1984); *Horace Mann Insurance Co. v. Independent School District No. 656*, 355 N.W.2d 413, 416 (Minn.1984); *Fireman's Fund Insurance Co. v. Hill*, 314 N.W.2d 834 (Minn.1982); *Illinois Farmers Insurance Co. v. Judith G.*, 379 N.W.2d 638, 642 (Minn.App.1986).

Contrary to American Family's contention, this line of cases is not relevant here. Defendants are not claiming that Peterson knew he was hitting the landlady but subjectively believed his hitting her would cause no harm. Rather, defendants are claiming that Peterson was in an alcoholic blackout, did not know what he was doing, and, therefore, had no intent to cause harm.

**5.** In *Farmers Insurance Exchange v. Sipple*, 255 N.W.2d 373 (Minn.1977), a state highway employee struck a local farmer during a heated argument, claiming, however, he did not strike in anger but as an unthinking reflexive, defensive action. Whether this conduct came within the intentional act exclusion was held to be a fact issue for the jury. In *Brown v. State Automobile & Casualty Underwriters*, 293 N.W.2d 822 (Minn.1980), during a tug-of-war between the insured and an airport baggage clerk over the insured's suitcase, the insured cut his finger and then struck the baggage clerk. The insured claimed he struck the clerk with his open hand in a reflex action provoked by the cut finger, and we held this claim raised a jury issue on whether the intentional act exclusion applied. *Compare Caspersen v. Webber*, 298 Minn. 93, 213 N.W.2d 327 (1973) (the insured, unable to find his coat at a restaurant and irritated with the coat check girl's refusal to let him in the cloakroom, pushed the girl aside, causing her to lose her balance and fall into a metal rack; it was held a jury issue whether the insured intended to injure the girl).

the act from having been intended"). On the other hand, at least one jurisdiction will not consider evidence of intoxication on whether an insured intended harm because "the law must not permit the use of such stimuli to become a defense for one's actions." *Hanover Insurance Co. v. Newcomer*, 585 S.W.2d 285, 289 (Mo.App.1979).

2. To describe the workings of the human mind in converting thought to action is an elusive task.[6] Our task here, however, is not so ambitious. We need only construe contract language. We ask what the contracting parties meant by excluding liability policy coverage for "bodily injury * * * which is expected or intended by any insured." In doing so, we keep in mind that policy language is to be construed in accordance with the reasonable expectations of the insured, *Atwater Creamery Co. v. Western National Mutual Insurance Co.*, 366 N.W.2d 271, 277 (1985), and that words such as "intended" are to be given their ordinary meaning.

The policyholder's expectations are to be considered in light of the purpose of the intentional act exclusion. This purpose, it is frequently said, is to deny the insured license to commit wanton and malicious acts. *Smith v. Senst*, 313 N.W.2d 202, 204 (Minn.1981). Here, judging from all outward manifestations, Peterson's actions, although bizarre, qualify as wanton and malicious. A trier of fact would have no alternative, based on this external evidence alone, but to find there was an assault with intent to injure the victim. Peterson's contention, really, is that whatever his specific intention might have been while drunk, if indeed he had any at all, it is not the specific intent he would have had if he had chosen not to drink. Absent an under-

standably provocative situation which induces an instinctive reflex or an impulsive defensive reaction, we do not think an insured reasonably expects his assault committed while voluntarily intoxicated to be within his policy coverage any more than an assault committed while sober. Nor do we think that other kinds of assaults, such as rape, if committed in an alcoholic blackout, are within an insured's reasonable expectations of insurance coverage. Finally, we are not inclined to create a situation where the more drunk an insured can prove himself to be, the more likely he will have insurance coverage.

3. We hold, therefore, that voluntary intoxication may not be used to deny an intent to injure one's victim where the circumstances of the assault otherwise compel an inference of intent to injure. Whether the reasonable expectations test would yield the same result in the case of mental illness, we need not decide. Judgment of coverage for the defendants is reversed. Because the defendant insured was unsuccessful in establishing coverage, the award of attorney fees is also reversed. *Lanoue v. Fireman's Fund American Insurance Co.*, 278 N.W.2d 49 (Minn.1979).

Reversed.

6. Peterson's expert testified that Peterson's mind was functioning at a "subconscious" level; that Peterson was powerless to control his behavior and his striking out with the hammer was an unplanned reaction to some stimulus (perhaps the landlady's refusal to sell him the kitchen appliances). On the other hand, the insurer's psychiatrist testified that consciousness and unconsciousness are physiological states; and that so long as an intoxicated person is conscious, the person has the mental capacity to form an intent, albeit that the formed intention may be uncontrollable or based on a distorted or deluded perception of reality and even though the person subsequently has no recollection of the event.

In *Smith v. Senst*, 313 N.W.2d 202 (Minn. 1981), the insured, who had been drinking and smoking hash, struck a barroom patron and fractured his jaw. This court rejected the insured's argument that he had acted reflexively in self-defense, and we held that an intent to injure would be inferred as a matter of law. The issue of whether the insured was too drunk to form an intent to injure was not discussed.