ECONOMY FIRE & CASUALTY
INSURANCE CO., Respondent,

v.

Richard Joseph MEYER, et
al., Appellants.

No. C2–88–549.

Court of Appeals of Minnesota.

Aug. 23, 1988.

Kay Nord Hunt, Ted E. Sullivan, Lommen, Nelson, Cole & Stageberg, P.A., Minneapolis, for respondent.

Michael Dady, Charles R. Weaver, Jr., Lindquist & Vennum, Minneapolis, for appellants.

Heard, considered and decided by NORTON, P.J., and HUSPENI and KALITOWSKI, JJ.

## OPINION

HUSPENI, Judge.

Richard Meyer stabbed Dr. Peter Andreone with a butter knife, and possibly a table fork, after Meyer discovered Andreone on Meyer's girlfriend's bed. When Andreone sued for damages, Meyer sought coverage as an insured under a homeowner's insurance policy issued by respondent, Economy Fire and Casualty Insurance Company (Economy), to Meyer's mother. Economy brought a declaratory judgment action naming Andreone and Meyer as defendants. Andreone seeks review of the trial court's grant of summary judgment which held that Economy had no duty to defend because the stabbing was an intentional act excluded from coverage under the terms of the policy. We affirm.

## FACTS

On November 19, 1985, at 12:20 a.m., Richard Meyer, who had been drinking heavily, visited Phyllis Tupa, his girlfriend, at her house. Tupa had a visitor, Andreone, who was sleeping in her bedroom. Meyer took a butter knife and a table fork from Tupa's kitchen drawer, went into the bedroom and stabbed Andreone in the abdomen. When Meyer sobered up, he had no recollection of the events.

The investigating officer reported that Meyer said he saw "a car in the driveway, [when he arrived at Tupa's home] but that didn't bother me" and that he claimed to have no recollection of events after entering Tupa's home:

It's sort of a blank right from there. I just said, "Well I came to say hi. What's wrong?" And she just got all nervous and she started pushing me out the door. And I thought something was wrong and I walked into the bedroom and there was the guy, laying in her bed. And I guess it got the better of me. I went nuts. I ran into the kitchen and I opened up the kitchen drawer. I don't know what, which drawer it was. I grabbed whatever was in there. And I ran in and I hit him with it. I didn't know if it was a fork, spoon, knife, I didn't know what it was. But, I was just so mad and I just hit him with it. And after I did that I ran out of the room. * * *

Andreone sued Meyer for damages. Economy defended Meyer under a reservation of rights agreement. Andreone and Meyer executed a *Miller v. Shugart* release under which Meyer admitted negligence and agreed to a settlement to be collected only from the proceeds of the policy in issue here. Economy brought a declaratory judgment action contending coverage under the homeowner's policy was precluded because Meyer's action fell within the intentional acts exclusion.

The homeowner's policy provides coverage for any claim brought against the insured for bodily injury caused by an "occurrence" defined in the policy as:

[A]n accident, including exposure to conditions, which results * * * in

(a). bodily injury;

There is no coverage under the policy for intentional acts. The exclusion clause states:

Personal Liability and * * * Medical Payments to Others do not apply to bodily injury * * *:

(a). which is expected or intended by the insured.

The trial court found no coverage under the policy and granted summary judgment to Economy. In its accompanying memorandum, the trial court stated:

[T]he Court finds as a matter of law that from the very nature of the act, an inference arises that the insured intended to injure the victim as a result of his assault.

[Andreone] claims that Meyer's conduct falls within the exception to the rule to infer an intent to harm as a matter of law where the insured's actions are of an instinctive nature or self defense in a provocative situation. That claim must be viewed in the light of the purpose for the intentional act exclusion.

\* \* \* \* \* \*

* * * To excuse Meyer's conduct in this situation as an instinctive reflex in a provocative situation, a naked man in his girlfriend's bed, would in effect, legitimize lawlessness or so-called "frontier justice" glamorized in fiction. Similarly, Meyer's return to the kitchen to arm himself to return to confront the naked man and stab him is not conduct an insured could reasonably expect to be covered by insurance.

Andreone seeks review of the summary judgment.

## ISSUES

1. Was the intentional act exclusion clause ambiguous?

2. Did the trial court err in determining that Meyer's actions were precluded from coverage by the intentional act exclusion clause?

## ANALYSIS

On appeal from the entry of summary judgment, "a reviewing court is limited to a determination of whether any genuine issue of material fact existed which should have been determined by a jury and whether the trial court erred in its application of the law." *Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (Minn.1979).

## I.

■ Meyer, relying on *Casperson v. Webber*, 298 Minn. 93, 98, 213 N.W.2d 327,

330 (1973) first argues: "Because this exclusionary clause does not expressly state that it was meant to exclude unintended injuries resulting from intentional acts, its provisions are at least arguably ambiguous." In *Casperson,* the clause excluding from coverage the intentional acts of the insured differed slightly from the clause at issue here, and stated:

> This coverage was subject to a special exclusion for "bodily injury * * * caused intentionally by or at the direction of the insured."

*Id.* at 97, 213 N.W.2d at 330. The argument that "this language is vague, misleading, and ambiguous" was dismissed by the supreme court in *Hartford Fire Insurance Company v. Wagner,* 296 Minn. 510, 511, 207 N.W.2d 354, 355 (1973). The *Casperson* court continued:

> If this clause is ambiguous, and that question may be arguable, it is subject to this rule of construction.

> Construing the provision in favor of the insured, we hold that the exclusion does not relieve the insurer of liability unless the insured has acted with intent to cause a bodily injury. When the act itself is intended but the resulting injury is not, the insurance exclusion has no application.

> \* \* \* \* \* \*

> * * * [A]n assault and battery would not come within the exclusion unless a reason for the act is to inflict bodily injury or when the character of the act is such that an intention to inflict an injury can be inferred.

*Casperson,* 298 Minn. at 98–9, 213 N.W.2d at 330 (citations omitted).

The exclusionary language used in Economy's policy has been considered by our supreme court. *See, e.g., American Family Mutual Insurance Co. v. Peterson,* 405 N.W.2d 418 (Minn.1987); *Horace Mann Insurance Co. v. Independent School District No. 656,* 355 N.W.2d 413 (Minn.1984). It was not found to be ambiguous. Consequently, the word "intentionally" is to be given its "ordinary meaning." *Peterson,* 405 N.W.2d at 422.

## II.

The supreme court in *Peterson* stated that "there are assaults by an insured where reason and common sense require, from the very nature of the act, an inference that the insured intended his assault to injure the claimant. In such cases, the insured will not be heard to say he did not intend to hurt the person; rather, it will be held as a matter of law that the conduct comes within the intentional act exclusion of a liability policy." *Peterson,* 405 N.W.2d at 420–21. The supreme court then stated an exception to this rule:

> [T]here may be seemingly intentional assaults where the circumstances nevertheless permit the trier of fact to infer that the insured did not intend his assaultive conduct to cause injury. This inference may arise where the insured's actions are more in the nature of an instinctive reflex or a sudden impulsive defensive reaction to a provocative situation. In these instances, a distinction is made between an intent to commit the act and an intent to injure, and the trier of fact may find the latter intent to be lacking.

*Id.* at 421. Andreone contends the stabbing in this case was in the "nature of an instinctive reflex or a sudden impulsive reaction to a provocative situation." *Id.* Even if we accept Andreone's argument that this was a provocative situation, we cannot agree the stabbing amounted to an "instinctive reflex" or a "sudden impulsive defensive reaction" in response to that situation.

*Peterson* cites two cases where action on the part of an insured amounted to an instinctive reflex or a sudden impulsive defensive reaction: *Farmers Insurance Exchange v. Sipple,* 255 N.W.2d 373 (Minn. 1977) (state highway employee struck farmer during a heated argument, claiming, however, he did not strike in anger but as an unthinking reflexive, defensive action); *Brown v. State Automobile and Casualty Underwriters,* 293 N.W.2d 822 (Minn.1980) (insured cut a finger during a tug-of-war with a baggage clerk and then struck the clerk; insured claimed he struck the clerk in a reflex action provoked by the

cut finger). The case before us is distinguishable from those above. The action of removing cutlery from a kitchen drawer, entering his girlfriend's bedroom and stabbing the naked man lying on her bed may have been instinctive or impulsive but was neither a sudden nor a reflexive or defensive reaction by Meyer. We conclude, therefore, that the stabbing does not fall within the exception set forth in *Peterson.*

## DECISION

Affirmed.