Roald STEEN, et al., Appellants,

v.

THOSE UNDERWRITERS AT LLOYDS, LONDON SIGNATORY TO POLICY NO. E0100191, Respondent.

No. C6-88-2627.

Court of Appeals of Minnesota.

June 13, 1989.
Review Denied Aug. 15, 1989.

James T. Hynes, Stapleton, Nolan & McCall, St. Paul, for appellants.

William M. Hart, Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, Minneapolis, for respondent.

Heard, considered and decided by CRIPPEN, P.J., HUSPENI and SCHULTZ *, JJ.

## OPINION

HUSPENI, Judge.

Claiming an enforceable Miller–Shugart agreement, appellants Roald and Sandra Steen seek review of a summary judgment granted for respondent Underwriters at Lloyds, London signatory to Policy No. E0100191 (insurance company). The sum-

mary judgment determined that the insured had breached the cooperation clause of the insurance contract by settling the claim without the consent of the insurer when coverage was not in dispute. We affirm.

## FACTS

In 1984, appellants entered into a franchise agreement with Teletronics, Inc. (TTI). An agent of a business brokerage firm, VR, Inc. (VR), had introduced appellants to the president of TTI. After investing in TTI, appellants discovered TTI was in poor financial condition. Asserting loss of money due to reliance on VR, appellants brought an action in 1985 against VR and the president of TTI alleging fraud/misrepresentation, negligence, and willful and reckless disregard for appellants' rights.

VR's attorney forwarded the summons and complaint to VR's local errors and omissions agency, which in turn forwarded the documents to respondent. VR and respondent agreed that VR's attorney would represent VR in the suit and that respondent would pay his fees. Consistent with stated policy exclusions, respondent reserved its right to deny liability for punitive damages and for any judgment based on false and fraudulent misrepresentations. There was no disclaimer of liability or reservation of rights for judgments based on negligence.

Appellants' attorney offered to settle the action for $75,000. In evaluating the demand, VR's attorney stated that he felt that VR had "significant defenses" to appellants' claims, and recommended $5,000 as a "reasonable and good faith attempt" to settle the case. Appellants' attorney responded with a proposed settlement of $70,000 "in accordance with the terms of *Miller v. Shugart* * * *."

In discussing the Miller–Shugart type settlement with respondent, VR's attorney described the responsibility he had to balance the duty to his client, VR, with the duty to act in good faith and cooperate

---

* Acting as judge of the Court of Appeals by ap-    pointment pursuant to Minn. Const. art. 6, § 2.

with the insurance company in defense of the claims.

Appellants' attorney communicated the $70,000 settlement proposal directly to respondent and expressed his wish to begin settlement negotiations with respondent's counsel. Appellants' attorney also indicated his intention to settle directly with VR if respondent did not participate. Respondent authorized VR's attorney to settle for $5,000. Appellants rejected this offer.

Aware that settlement negotiations were continuing between VR and appellants, respondent indicated that if this matter were settled without its express written consent, the settlement would breach condition 1(D) of the policy voiding application of the policy to any settlement.[1]

Ultimately a stipulation between VR and appellants was reached under the terms of which VR agreed to entry of judgment in the amount of $70,000, recoverable only as against the proceeds of any applicable insurance. The stipulation states the parties desired to reach a settlement "in conformity with *Miller v. Shugart.*" The basis for VR's liability as stated in the stipulation is negligence, not fraud or intentional misrepresentation or willful or reckless conduct.

When appellants moved the court for entry of judgment pursuant to the stipulation, respondent appeared, and although the record is not clear, apparently requested deletion of language referring to *Miller.* Since no other party objected, the language was deleted.

When appellants initiated this action against respondent, respondent defended on the theory that appellants had breached the contractual policy provision that VR not settle any claims under the policy without the written consent of respondent.

This appeal followed award of summary judgment to respondent.

## ISSUES

1. Did the action of the insured in stipulating to a settlement for $70,000 without consent of the insurer constitute a breach of the non-unilateral settlement condition of the cooperation clause of the policy?

2. If there was a breach of the cooperation clause, was it material and prejudicial?

3. Is respondent insurer estopped from alleging breach of the cooperation clause's bilateral settlement condition for purposes of summary judgment?

4. Was respondent required to have an attorney represent its interests in the underlying action between appellants and the insured?

## ANALYSIS

■ In reviewing a summary judgment, the court must determine whether there are any genuine issues of material fact and whether the trial court correctly applied the law. *Betlach v. Wayzata Condominium,* 281 N.W.2d 328, 330 (Minn.1979). The evidence must be viewed in the light most favorable to the non-moving party. *Vieths v. Thorp Finance Co.,* 305 Minn. 522, 524–25, 232 N.W.2d 776, 778 (1975).

■ 1. Appellants argue that their rights are controlled by the principles of *Miller v. Shugart,* 316 N.W.2d 729 (Minn. 1982).

*Miller* involved injury to a passenger (Miller) in a car driven by Shugart and owned by Locoshonas. *Id.* at 731–32. The insurer initiated a declaratory judgment action to determine coverage, arguing that Shugart was not Locoshonas' agent and therefore there was no coverage available for Miller's injuries. The court determined that the policy was applicable to owner and driver and Miller initiated an action against both. Meanwhile, the insurer appealed the declaratory judgment determination. *Id.* at 732.

---

1. The pertinent language of condition 1(1) stated:

THE INSURED'S DUTIES IN THE EVENT OF A CLAIM OR SUIT—COOPERATION CLAUSE. It is a condition precedent to the application of all insurance afforded herein that the Insured shall: * * * (d) not voluntarily assume or admit liability, nor without the Underwriter's prior written consent settle any claim or incur any expense, except at its own cost.

While the insurer's appeal was pending and therefore subject to reversal or modification, Miller, Shugart, and Locoshonas stipulated to settlement of Miller's claims to be collected only from the proceeds of any applicable insurance policy. Judgment was entered on the stipulation. *Id.*

Subsequently, the supreme court affirmed the declaratory judgment decision. When Miller garnished the insurer, it defended alleging breach of the policy's cooperation clause. *Id.*

The *Miller* court, in addressing the threshold question of whether the insureds breached their duty to cooperate by not waiting until after the coverage issue had been decided, balanced the duties and rights of the insureds against those of the insurer. The court found the duty to cooperate was not absolute when balanced against the right of the insureds to protect themselves from possible liability during the period when the insurer was contesting coverage.

> While the defendant insureds have a duty to cooperate with the insurer, they also have a right to protect themselves against plaintiff's claim. The attorneys hired by [the insurer] to represent them owe their allegiance to their clients, the insureds, to best represent their interests. If, as here, the insureds are offered a settlement that effectively relieves them of any personal liability, at a time when their insurance coverage is in doubt, surely it cannot be said that it is not in their best interest to accept the offer. *Nor, do we think, can the insurer who is disputing coverage compel the insureds to forego a settlement which is in their best interests.*
>
> *On the facts of this case* we hold, therefore, that the insureds did not breach their duty to cooperate with the insurer, which was then contesting coverage, by settling directly with the plaintiff.

*Id.* at 733–34 (emphasis added) (footnote omitted).

*Miller* does not confer upon insureds an absolute right to do what is in their own financial interest, regardless of whether the insurer is disputing coverage. Here, respondent did not contest coverage for VR's negligent acts but reserved its rights to defend against indemnification for false and fraudulent misrepresentations and for punitive damages. In *Miller,* the insurer denied coverage. Here, VR implicitly recognized in the stipulation that the policy does not cover non-negligent conduct:

> While VR believes that *any misconduct on its part would be considered negligent in nature, and not fraudulent or reckless, and should be covered by its policy with Underwriters,* VR acknowledges that it is entering into this Agreement with the specific desire of avoiding a judgment that might not be covered by insurance and therefore endanger VR's assets.

(Emphasis added.)

VR intended to shift the risk of loss for non-negligent harmful conduct to respondents, despite VR's recognition that such conduct was excluded from coverage under the policy. Thus, VR stipulated to negligence, the liability basis against which the insurer had recognized its duty to defend. These circumstances are distinguishable from those in *Miller.*

Appellant cites several post-*Miller* cases to argue that insureds have the right to breach a non-unilateral settlement clause in order to avoid judgments not covered by insurance. We find appellants' reliance on the cited cases misplaced. While each case appellants refer to involves an insurance policy exclusion for intentional acts, none involves an alleged violation of a unilateral settlement or cooperation clause. *See Economy Fire & Casualty Insurance Co. v. Meyer,* 427 N.W.2d 742 (Minn.Ct.App. 1988); *Economy Fire & Casualty Co. v. Iverson,* 426 N.W.2d 195 (Minn.Ct.App. 1988), *pet. for rev. granted* (Minn. July 28, 1988); *Ross v. City of Minneapolis,* 408 N.W.2d 910 (Minn.Ct.App.1987), *pet. for rev. denied* (Minn. Sept. 23, 1987).

None of the other cases cited by appellants deals with the precise issue present in *Miller;* specifically balancing the insured's duty to cooperate with the insured's right to protect itself during a period of disputed

coverage. *See Clemens v. Wilcox*, 392 N.W.2d 863 (Minn.1986); *St. Michel v. Burns and Wilcox, Ltd.*, 433 N.W.2d 130 (Minn.Ct.App.1988), *pet. for rev. denied* (Minn. March 17, 1989); *Hartfiel v. McLennan*, 430 N.W.2d 215 (Minn.Ct.App.1988); *Traver v. Farm Bureau Mutual Insurance Co.*, 418 N.W.2d 727 (Minn.Ct.App. 1988), *pet. for rev. denied* (Minn. April 15, 1988); *Kohler v. State Farm Mutual Automobile Insurance Co.*, 416 N.W.2d 469 (Minn.Ct.App.1987); *Osgood v. Medical, Inc.*, 415 N.W.2d 896 (Minn.Ct.App. 1987), *pet. for rev. denied* (Minn. Feb. 12, 1988).

In *Sargent v. Johnson*, 551 F.2d 221 (8th Cir.1977), the insured disputed the amount of coverage available, unilaterally discharged the insurer's attorney defending the case, and without insurer's consent entered into a settlement with the claimant. *Id.* at 230. Under these circumstances, the reviewing court concluded that the insured, by entering into the settlement agreement

> without the concurrence or consent of its insurance carrier, breached the cooperation clauses of the insurance policies. [The court held] that neither the settlement nor the district court's approval of that settlement [was] binding upon [the insurer].

*Id.* at 224.

We believe the rule of *Sargent* is applicable here.

> Those few cases in which courts have permitted insureds to settle even though their insurers were affording timely defense are cases in which the insurers, while defending, denied any liability under the policies in question. All such cases are distinguishable from the instant case, in which [the insurer] has never delayed nor refused a defense of [the insured], has never denied all liability, and has never been presented with a demand that it accede to a reasonable and prudent settlement.

*Id.* at 231 (citations omitted).

Here, respondent had not delayed or refused defense of VR, had never denied all liability, and had never been presented with a demand that it accept a reasonable and

prudent settlement, particularly if credence is given to VR's counsel's representation to respondent that a $5,000 settlement would be reasonable.

Under *Miller*, a purported breach of a cooperation clause is analyzed in terms of a careful balancing of the duty of the insured to cooperate with the right of the insured to protect itself during periods when coverage is in doubt. Here, only the possible reason(s) for liability were at issue. Hence, the balance weighs in favor of finding the duty to cooperate as prevailing, and that the unilateral settlement was a breach of that duty.

■ 2. A breach of the cooperation clause which is material and prejudices the insurer can void coverage. *Juvland v. Plaisance*, 255 Minn. 262, 268–69, 96 N.W. 2d 537, 541–42 (1959). The breach here was material since it foreclosed the possibility of a later settlement in which the insurer could participate. There remains the question of whether the insurer was prejudiced by the unilateral settlement. Under *Miller* an insurer cannot be bound by a settlement if there is fraud or collusion between the settling parties or if the settlement does not meet the reasonable and prudent person standard. *Miller*, 316 N.W.2d at 734–35. Furthermore, *Ross* and *Meyer* indicate that even after the parties have entered into a Miller–Shugart type settlement, the insurer may still successfully contest coverage under the policy. *Meyer*, 427 N.W.2d at 744–45; *Ross*, 408 N.W. 2d at 914. However, even if a settlement is deemed non-binding on the insurer, it may still be prejudicial.

■ We conclude that the Miller–Shugart agreement in this case prejudices respondent's rights even if it is not deemed to be binding. First, in any garnishment action respondent would have to defend against appellants' showing that the settlement met the relaxed standard of "what a reasonably prudent person in the position of the defendant would have settled for on the merits of plaintiff's claim." *Miller* at 735. Second, respondents may not be entitled to a jury trial. *Hartfiel*, 430 N.W.2d

at 220. *See also Buysse v. Baumann–Furrie & Co.*, 428 N.W.2d 419, 427 (Minn. Ct.App.1988), *pet. for rev. granted* (Minn. Oct. 19, 1988). Third, respondent would no longer have the right to the insured's cooperation in any defense of respondent's interests, because under the settlement VR and its counsel agreed to testify on behalf of appellants as to the "reasonableness" of the agreement.

■ 3. Appellants also argue that respondent is estopped from asserting breach of the cooperation clause/bilateral settlement clause, because respondent's attorneys failed to file any documents objecting to the entry of judgment based on the stipulated settlement, and failed to argue that it breached the insured's duties.

Appellants' reliance on *Faber v. Roelofs*, 311 Minn. 428, 250 N.W.2d 817 (1977) to support their estoppel argument is misplaced. In *Faber*, the insurer defended the insured without a reservation of rights, and was therefore estopped from raising the defense of non-coverage. *Faber* at 434, 250 N.W.2d at 821. Here, respondent, through its attorneys, requested deletion of the language referring to *Miller* before judgment was entered on the stipulation. Further, appellants concede that respondent appropriately "took the position that the settlement would not be enforceable which they have a right to contend." In this statement, appellants effectively admit that respondent took appropriate action to avoid estoppel.

Finally, there is no evidence that appellants reasonably relied to their detriment on respondent's actions at the settlement hearing or in any manner changed their position in reliance upon those actions. The stipulation was executed two weeks before the hearing. Breach of the cooperation clause occurred at least by the time the settlement was tendered to respondent, if not before. Appellants' argument for estoppel is unpersuasive.

■ 4. Appellants also contend that respondent was required to furnish separate counsel for itself and its insured at trial, and that since it did not, and had not initiated a declaratory judgment action to determine coverage, it should be estopped from its coverage defenses. *See Prahm v. Rupp Construction Co.*, 277 N.W.2d 389, 390–91 (Minn.1979). Noting a conflict of interest where an insurer disclaimed coverage but was required at trial to defend its insured against plaintiff's claims, the supreme court has declared:

> [The insured] should retain its own counsel to defend against plaintiffs' claim. [The insurer] is required to reimburse [the insured] for this expense and should have its own counsel present at trial to establish the facts necessary to determine the coverage question. To the extent that [certain prior cases] hold that the insurer should defend its insured while reserving the right to coverage, they are hereby overruled.

*Prahm* at 391.

The *Prahm* court was concerned with preserving full and fair litigation on the merits and sought to avoid conflicts of interest that resulted in detriment to the insured. We must determine whether *Prahm* applies to the facts of this case.

As a preliminary matter, we note that the reservation of rights here was as to only those acts clearly excluded under the language of the policy. Negligence was the only basis alleged in the complaint which was covered by the policy, and coverage for negligence was not disputed by the insurer.

> Where the question to be resolved in the declaratory judgment action between an insurer and an insured will be decided in the main action, it is inappropriate to grant a declaratory judgment.

*Grain Dealers Mutual Insurance Co. v. Cady*, 318 N.W.2d 247, 250 (Minn.1982). Under these circumstances, it is difficult to see what purpose a declaratory judgment action would have served when the sole basis for coverage was not disputed by the parties.

We must also examine the question of control of the litigation. VR's attorney worked closely with respondent's attorney and ultimately expected to receive reimbursement for his services from the insur-

er. Nevertheless, his duty was to protect the interests of his client. He was the regular counsel for VR prior to the lawsuit. He helped VR negotiate a settlement which appears to be designed to avoid liability to VR regardless of the outcome of this appeal. If the suit against VR had gone to trial, he would not have been constrained in defending VR's rights by any absence of counsel representing the insurer. *See Miller*, 316 N.W.2d at 733 n. 4. It would have been in the insured's interest to have shown either no culpable conduct or at worst negligence, conduct covered by the policy, while the insurer could avoid liability by showing fraud or reckless conduct. Under these circumstances, absence of counsel for respondent in the proceedings would be of concern to respondent, not to VR. VR's rights were not prejudiced by the absence of separate counsel for respondent. Accepting appellants' argument on this issue would, in effect, have this court declare that respondent violated VR's rights by failing to retain legal counsel to protect respondent's rights. Such a declaration is devoid of logic.[2]

Further, while *Prahm* indicates that the insurer should have its own counsel present at trial, it appears from the record before us that there never was a trial of the underlying action between VR and appellants. It would be unreasonable to require respondent to have counsel present at a trial that never took place. Appellants' argument that *Prahm* applies, that *Prahm* was violated and that therefore respondent's rights under the policy must be denied, is unpersuasive.

There is valid concern that conflicts of interest be avoided in resolution of coverage disputes, and various solutions have been proposed, *see, e.g., Hartfiel v. McLennon*, 430 N.W.2d 215, 222–231 (Minn.Ct. App.1988) (Wozniak, C.J., specially concurring and dissenting). However, in this case the lack of prejudice to the insured on the coverage issue, the insurer's acceptance of the duty to defend, and the lack of an actual trial in the underlying action, cause

us to conclude that denial of respondent's defense of the breach of the cooperation clause would lead to an unacceptably harsh result, one not contemplated by the *Miller* court.

## DECISION

The trial court correctly granted summary judgment based on breach of the cooperation clause where the insurer did not dispute coverage as to negligence and the respondent did not assert that the policy covered more than negligent acts. On the facts of the case the insurer was not estopped from asserting its policy defense.

Affirmed.

---

**2.** Appellants' argument that they should have been permitted to examine respondent's claim

file must also fail on this basis.