*828 SIMONETT, Justice
(dissenting in part).
I view this case somewhat differently. I would reach the coverage issue, and therefore I respectfully dissent in part.
I.
The jury had to decide if Iverson shot Olson negligently or intentionally.[1] It found that Iverson shot Olson intentionally —i.e., he expected or intended to cause bodily injury to Olson — but that he did so “in the course of the lawful defense of his person or property.” The court of appeals, nevertheless, thought there still remained an issue “of negligent use of too much force.” Economy Fire & Cas. Co. v. Iverson, 426 N.W.2d 195, 200 n. 2 (Minn.App.1988). But as the majority opinion points out, by finding that Iverson had used reasonable force the jury necessarily found that he had not used “too much” force.
In most self-defense cases, the amount of force used, it seems to me, has nothing to do with negligence. “There is, properly speaking, no such thing as a negligent assault.” W. Prosser, Torts § 10, at 41 (4th ed. 1971). If Iverson had used “too much” force, he would not have been negligent; rather, he would have been liable to Olson for an assault and battery. See Shulze v. Kleeber, 10 Wis.2d 540, 545, 103 N.W.2d 560, 564 (1960). A person defending his or her life or property is privileged to use force, provided it is reasonable. See J.I.G. No. 506. Perhaps Iverson could have shot his assaulter in a less vital spot or should have retreated rather than have shot at all. But whatever the case, the force used by Iverson was used intentionally to injure Olson, and the reasonableness of that force bears on whether or not the battery was privileged, not whether it was negligent.
II.
The jury found Iverson’s assault was privileged. The majority opinion holds that this finding “extinguishes,” by way of collateral estoppel, any tort liability of Iverson to Olson; and therefore the issue of policy coverage is moot.
The difficulty with this approach, it seems to me, is that there is no pending tort action in which to assert collateral estoppel. The tort action was settled. The trouble here is that the belated, so-called Miller-Shugart settlement has skewed the issue in the declaratory judgment action.
The parties had sought a declaration whether Iverson’s shooting was intentional and therefore barred by the intentional act exclusion. Before that determination could be made — at the very last minute — Iverson stipulated the shooting was negligent and settled the tort action. Thus it would seem that the only issue remaining is whether the settlement agreement is enforceable against Economy, i.e., whether it was reasonable and prudent for Iverson to settle for $250,000, in compromise of a (then) doubtful negligence liability claim. Olson did not settle on the basis that Iverson was liable for an intentional assault; therefore, that issue, apparently, has become irrelevant. This, however, cannot be. If the tort action had been tried first, a verdict of negligence would have been binding on Economy; Iverson, by unilaterally settling the tort action, surely cannot impose coverage for the settlement liability on Economy without affording Economy an opportunity to prove the shooting was not negligent, but intentional.
The problem here is that the parties have assumed their settlement was a Miller-Shugart settlement. It is not. This is not a ease where the insurer denied all coverage regardless of how the disputed liability issue might be resolved. Here both coverage and liability depended on the same factual determination, i.e., whether the insured’s conduct was negligent or intentional; the insurer agreed there was coverage if the conduct was negligent but reserved the right to assert the intentional act exclusion if the factfinder should find the conduct was intentional. By depriving his in *829 surer of its right to have that factual determination made, the insured violated the cooperation clause in his policy. In short, the settlement stipulation and the judgment entered thereon are, as a matter of law, unenforceable against Economy. Sargent v. Johnson, 551 F.2d 221 (8th Cir.1977).
The court of appeals recently came to the same conclusion in Steen v. Those Underwriters at Lloyds, 442 N.W.2d 158 (Minn.App.1989), pet. for rev. denied, Aug. 15, 1989. There, too, the insurer afforded a defense for negligence but reserved the right to deny coverage if the insured’s conduct was found to be intentional. The insured entered into a so-called Miller-Shu-gart settlement on an admission of negligence. The plaintiff then sued the insurer to recover on the settlement. The court of appeals held the settlement was unenforceable against the insurer because it violated the insured’s contractual obligation to cooperate with its insurer.
Miller v. Shugart, 316 N.W.2d 729 (Minn.1982), allowed a relaxation of the insured’s duty to cooperate in a very limited situation, and the rationale of Miller-Shugart should not be extended beyond those limits. See also Buysse v. Baumann-Furrie & Co., 445 N.W.2d 814 (Minn.1989), decided today. As Judge Hus-peni pointed out in Steen, in Shugart the insurer had denied any coverage, and its denial was based not on whether the defendant driver was negligent but on an entirely different factual issue, namely, whether the defendant driver was an agent of the owner and therefore an insured under the policy. We permitted the defendant driver to settle with the plaintiff to escape personal liability, but added, “[o]f course, the insurer escapes the risk if it should be successful on the coverage issue.” Id. at 734.[2]
In this case the so-called Miller-Shugart settlement was made part of the record on appeal. It is enough in this declaratory judgment action to enter judgment declaring: (1) the liability for which coverage is sought is based on a settlement stipulation which, as a matter of law, is unenforceable against Economy; and (2) the finding that Iverson’s shooting of Olson was privileged as self-defense is binding on Olson in any other proceeding wherein Olson might assert tort liability against Iverson. In effect, this ends the litigation.
I would nevertheless answer the question the parties have briefed and urged us to answer, namely, is there coverage for an assault committed in self-defense? I would do so for two reasons. First of all, the court of appeals in Western Fire Ins. Co. v. Persons, 393 N.W.2d 234 (Minn.App.1986), has held there is coverage for a self-defense assault, arid this issue bears on matters raised in Part IV hereof (duty to defend, attorney fees, and order of trial in assault-type cases). Secondly, except in a case alleging solely an issue of pure self-defense (an exceedingly rare case), it is almost impossible, as this case illustrates, to reach the coverage issue. We should, therefore, reach it now and clear up the confusion.
III.
If an insured in self-defense intentionally injures the person threatening his life or property, and does so expecting or intending to cause bodily injury to that person, does the intentional act exclusion apply to bar insurance coverage for the injury? The answer, I believe, is obviously yes. There is no coverage.
The fact that the insured acts in self-defense may bear on the insured’s motive in assaulting the plaintiff, but under the intentional act exclusion it is the insured’s *830 intent, not his motive, that is relevant. The fact that the insured may devoutly wish he did not have to shoot his assaulter does not change the fact that he does so intentionally. Shooting plaintiff with the intent to shoot and injure him comes within the plain wording of the intentional act exclusion. We cannot rewrite the exclusion. Moreover, there is nothing gained by ignoring the plain meaning of the exclusion: As this case illustrates, if the assault is privileged as self-defense, there is no liability; if the assault is not privileged, the intentional act exclusion precludes coverage for the unprivileged assault. Finally, to require an insurer to indemnify for self-defense assaults would be bad policy. It would be an invitation for parties to raise self-defense as an issue in almost every altercation accompanied by the inevitable temptation of the participants to accommodate their version of the brawl to favor coverage for the injured party.
There is much needless confusion on whether a self-defense assault is barred by the intentional act exclusion. See the split of authorities in Annotation, 34 A.L.R. 4th 761 (1984). Cases from other jurisdictions which have indicated there is coverage for self-defense assaults have done so by equating a self-defense assault with a negligent assault. See, e.g., Allstate Ins. Co. v. Novak, 210 Neb. 184, 313 N.W.2d 636 (1981).
We should make clear the narrow scope of the coverage question in this case. We are not dealing with negligent conduct. We are not dealing with intentional conduct where there is no intent or expectation to injure. Nor are we dealing with the kind of assaultive behavior which is no more than “an instinctive reflex or a sudden impulsive defensive reaction to a provocative situation.” American Family Mut. Ins. v. Peterson, 405 N.W.2d 418, 421 (Minn.1987). None of these cases is really a “self-defense case” and that characterization only confuses the issue.[3]
This is a case, rather, where the insured, in self-defense, intentionally assaults the person threatening his life or property, with the intent to cause bodily harm to that person. The jury so found. The question is whether this assault, regardless whether the force used is reasonable or excessive, comes within the intentional act exclusion. I would hold that it does. I agree whether a self-defense assault which injures an innocent bystander comes within the exclusion is an open question, although it might not be accurate to characterize this situation as a true “self-defense” case. If an insured acts negligently, there is insurance coverage because he is negligent, not because he was acting in self-defense when he acted negligently.
IV.
This leaves a remaining issue: Did the trial court err in awarding attorney fees to Iverson’s attorney for defending Iverson in this declaratory judgment action? The majority opinion would allow fees up to the time the Miller-Shugart settlement was made, i.e., up to the time of the verdict.
Economy has always agreed it owes Iver-son a defense in the tort action because of the negligence count, but it argues it should not have to pay Iverson’s attorney fees in this declaratory judgment action because Iverson has been unsuccessful in establishing insurance coverage.[4] Nevertheless, I would allow attorney fees here.
I would hold that where the factfinder’s determination in a declaratory judgment *831 action brought to decide coverage necessarily and effectively resolves the issues of underlying tort liability, the insurer should pay the insured’s attorney fees in the declaratory judgment action. The insurer should pay because it would have paid Iver-son’s attorney fees if the tort action which involved the same dispositive fact issue had been tried first; it should pay because it is satisfying its duty to defend on the negligence count in the tort action by litigating that count in the declaratory judgment action.
Whether Olson’s tort action or Economy’s declaratory judgment action was tried first, the trier of fact would decide whether Iverson’s shooting of Olson was negligent (for which there would be liability and admitted coverage), or whether his conduct was an intentional assault (for which there would be liability and no coverage unless the assault was without intent to injure), or whether his assault was privileged as self-defense (in which event there would be no liability). Because the court of appeals in Western Fire Ins. Co. v. Persons, supra, had held that a self-defense assault was covered, the parties in this case undoubtedly felt they had to try the declaratory judgment action first.
I agree Economy need not pay for Iver-son’s attorney fees after the verdict in this case when, by that time, Iverson had settled. Economy is not required to finance its insured’s efforts in this appeal to help Olson collect against Economy.

. At trial Iverson testified that he did not intend to shoot Olson; that he only pointed the gun at Olson and Olson grabbed the barrel; that there was a struggle, and the gun accidentally went off. Perhaps this version of events might support a finding of negligence, but the jury, apparently believing this scenario was influenced by Iverson’s self-interest, did not believe it.

. Compare, for example, Hennings v. State Farm Fire & Cas. Co., 438 N.W.2d 680 (Minn.App.1989). There the insured was exposed to liability for a boating accident, and the insurer denied coverage on the entirely separate grounds that the business pursuits and watercraft exclusions of its policy applied. The insured then properly entered into a Miller-Skugart settlement with the plaintiff. In a subsequent action by plaintiff against the insurer, it was determined that the policy exclusions did not apply, but, further, that the amount of the settlement was unreasonable. The court of appeals reopened the tort action on the issue of what would be a reasonable settlement.

. In Farmers Ins. Exchange v. Sipple, 255 N.W.2d 373, 377 (Minn.1977), we said that where an insured "acted instinctively in the form of a reflex,” the jury could find, as it did, that the insured did not expect to or intend to injure the claimant. We also commented in passing that the insurer's counsel, during his oral argument, had admitted that if the insured had acted in self-defense, the intentional act exclusion would be inapplicable. We did not, however, adopt this admission of counsel nor analyze it, nor was there any need to do so as the case did not involve self-defense.

. We have denied attorney fees to an insured who is unsuccessful in a declaratory judgment action in establishing coverage. See Continental Western Ins. Co. v. Toal, 309 Minn. 169, 244 N.W.2d 121 (1976); State Farm Fire & Cas. Co. v. Williams, 355 N.W.2d 421 (Minn.1984); American Family Mut. Ins. v. Peterson, 405 N.W.2d 418 (Minn.1987). On the other hand, we allow attorney fees where the insured is successful in establishing coverage. Morrison v. Swenson, 274 Minn. 127, 142 N.W.2d 640 (1966); Lanoue v. Fireman's Fund, 278 N.W.2d 49 *831 (Minn.1979); Brown v. State Auto, 293 N.W.2d 822 (Minn.1980). The rationale is that if there is coverage there is a duty of the insurer to defend and relieve the insured of the financial burden of the litigation, and, therefore, the insurer's failure to pay the insured’s attorney fees is a breach of contract. Cf. Security Mut. Cas. Co. v. Luthi, 303 Minn. 161, 226 N.W.2d 878 (1975) (policy provided for insured’s reimbursement). See also Grain Dealers Mut. Ins. Co. v. Cady, 318 N.W.2d 247, 251 n. 10 (Minn.1982).