United States Court of Appeals
For the Eighth Circuit
No. 15-1465

American Family Mutual Insurance Company

*Plaintiff - Appellee*

v.

John Martin Donaldson

*Defendant - Appellant*

Todd Richard Patton; Jacob Todd Patton

*Defendants*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: October 22, 2015
Filed: April 26, 2016

_____

Before WOLLMAN, BYE, and GRUENDER, Circuit Judges.

_____

BYE, Circuit Judge.

American Family Mutual Insurance Company (American Family) brought this declaratory judgment action to determine whether an umbrella insurance policy it

issued to Todd Patton provided any coverage for an automobile accident in which a passenger in a vehicle driven by Todd's son, Jacob Patton, was seriously injured. The district court[1] granted summary judgment in favor of American Family after concluding the umbrella policy did not provide coverage. We affirm.

I

In April 2011, Jacob Patton obtained his driver's license. He was eighteen years old at the time. About one week later, Jacob decided to drive his father's Chevrolet minivan after he had been drinking. Jacob's friend, John Donaldson, was a passenger in the vehicle. A pedestrian observed Jacob driving erratically and called 911. When a police officer responded to the 911 call, saw the vehicle and turned on his siren, Jacob panicked and tried to flee. Shortly thereafter, but not before reaching speeds exceeding at least sixty miles per hour, Jacob lost control of the minivan and collided into a tree. Donaldson suffered serious injuries in the accident and was hospitalized for almost a month following multiple surgeries. Jacob was also taken to the hospital and had his blood drawn for analysis, which revealed a blood alcohol concentration of .20.

At the time of the accident, American Family insured the Pattons' vehicle under an automobile policy providing $100,000 in coverage. Jacob's father, Todd, had also purchased an umbrella policy from American Family with policy limits of $1,000,000. Within just months of the accident, American Family negotiated the terms of a Drake-Ryan settlement[2] with Donaldson in which American Family agreed the automobile

---

[1] The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

[2] A Drake-Ryan settlement is named after the Minnesota Supreme Court's decision in Drake v. Ryan, 514 N.W.2d 785 (Minn. 1994). Generally, this type of settlement permits an insurer closest to the risk, i.e., a primary carrier, to settle with a plaintiff in exchange for a complete release of any claims against an insured

policy provided primary coverage to Donaldson for the injuries arising out of the accident and further agreed to pay the full policy limits of the automobile policy. American Family did not, however, agree that its umbrella policy provided coverage but left Donaldson free to pursue a claim against the excess policy. Significantly, a Drake-Ryan settlement protects an insured defendant from any further personal liability, except to the extent a plaintiff may successfully pursue a claim against the policy limits of an excess carrier. The settlement in this case specifically provided that, by accepting the full policy limits of the automobile policy and preserving the right to pursue coverage under the umbrella policy, Donaldson would "refrain from collecting or attempting to collect any unsatisfied portion of such judgments from the personal assets of Todd Patton and Jacob Patton." Appellee's App. at 129.

After settling for the policy limits of the primary automobile policy, Donaldson brought suit in Minnesota state district court against both Jacob and Todd Patton for the injuries arising out of the accident. For its part, American Family filed this declaratory judgment action against both the Pattons and Donaldson alleging that it had no duty to defend or indemnify the Pattons under the umbrella policy. American Family had, however, been providing a defense to the Pattons in the state district court action, while still reserving its right to litigate coverage issues under the umbrella policy.

In response to the declaratory judgment action, the Pattons obtained a new attorney in the state district court action. The new attorney then entered into a Miller-Shugart settlement[3] with Donaldson which admitted liability and provided for a

_____

defendant, but also preserves the plaintiff's right to pursue a claim against a secondary, or excess, carrier up to the limits of the excess carrier's policy. The added wrinkle in this case is that the primary and excess carriers just happen to be the same insurance company, American Family.

[3]A Miller-Shugart agreement is named after the Minnesota Supreme Court's decision in Miller v. Shugart, 316 N.W.2d 729 (Minn. 1982). Generally, this type of

-3-

binding arbitration to set the amount of damages. The Pattons' new attorney notified American Family of the binding arbitration and gave American Family the opportunity to appear and participate at the hearing, but American Family chose not to appear, instead advising the Pattons that it believed the Miller-Shugart settlement violated the umbrella policy's cooperation clause. The arbitrator ultimately set the amount of damages at $1,250,000. The arbitration award was filed with the state district court, and a final judgment was entered pursuant to the award.

In this separate declaratory judgment action, American Family filed a motion for summary judgment primarily contending that Jacob Patton's conduct at the time of the accident fell within the umbrella policy's intentional act exclusion.[4] The district court granted the motion for summary judgment on the grounds that Jacob's conduct fell within the intentional act exclusion.

---

settlement occurs when an insurer has abandoned its insured by denying both the duties to defend and indemnify an insured under the terms of a policy. The abandoned insured then consents to having a judgment entered against him in exchange for the plaintiff's agreement to release the insured from any personal liability and to satisfy any judgment only out of the contested insurance proceeds. Although American Family was defending the Pattons in the underlying state court action, the Pattons nevertheless contend American Family had effectively abandoned them by filing the declaratory judgment action and not adequately preparing for trial in the state court action.

[4]The umbrella policy's intentional act exclusion provides as follows:

> We will not cover injury caused by or at the direction of any insured even if the actual injury is different from that which was expected or intended from the standpoint of any insured. This exclusion does not apply to personal injury when your actions are not fraudulent, criminal, or malicious.

Appellee's App. at 121.

Donaldson filed an appeal in our Court challenging the district court's determination that the umbrella policy's intentional act exclusion barred coverage. While the appeal was pending, Jacob Patton was convicted of felony criminal vehicular operation of a motor vehicle as a result of his conduct in the accident which injured Donaldson. Because Jacob's conviction potentially triggered a second policy exclusion for violations of law,[5] we declined to exercise jurisdiction over the appeal and sent this case back to the district court to consider in the first instance whether the violation-of-law exclusion was an additional or alternative ground for granting American Family summary judgment.

On remand, Donaldson asserted the umbrella policy's severability clause[6] triggered separate coverage for Todd Patton even assuming one or both of the contested exclusions for intentional acts and violations of law might bar coverage for Jacob Patton. See Am. Nat'l Fire Ins. v. Estate of Fournelle, 472 N.W.2d 292, 294 (Minn. 1991) ("The intent of a severability clause is to provide each insured with separate coverage, as if each were separately insured with a distinct policy, subject to the liability limits of the policy. Thus, severability demands that policy exclusions be

---

[5]The umbrella policy's violation-of-law exclusion provides as follows:

> We will not cover injury arising out of violation of a penal law or ordinance by or with the knowledge or consent of an insured when an insured is convicted of such violation.

Appellee's App. at 121.

[6]The umbrella policy's severability clause provides as follows:

> Severability of Insurance. This insurance applies separately to each insured. This condition will not increase our limit for any one occurrence.

Appellant's App. at 167.

construed only with reference to the particular insured seeking coverage. . . . A reasonable interpretation of [the severability clause] leads to the obvious and singularly correct conclusion that each insured must be treated as if each were insured separately, applying exclusions individually to the insured for whom coverage is sought.") (internal citations omitted).

The district court rejected the Pattons' argument regarding the severability clause and again granted summary judgment to American Family, concluding the violation-of-law exclusion also barred coverage as to both Jacob and his father, Todd. Donaldson filed a timely appeal. In this second appeal, Donaldson contends neither of the contested exclusions bars coverage for Jacob. Donaldson further contends the policy's severability clause triggers separate coverage for Todd Patton under Fournelle even if both of the contested exclusions apply to Jacob's conduct.

American Family urges us to affirm the district court and conclude both of the umbrella policy's contested exclusions bar coverage for Jacob and Todd Patton. American Family further urges us to consider two additional grounds it raised that were not addressed by the district court. First, American Family contends the Pattons violated the umbrella policy's cooperation clause[7] and thereby voided all coverage by entering into a Miller-Shugart agreement with Donaldson and admitting liability when American Family had already protected the Pattons from any personal exposure in the earlier Drake-Ryan settlement. Second, American Family argues the amount of damages determined in the binding arbitration under the Miller-Shugart agreement was unreasonable as a matter of law.

---

[7]The umbrella policy's cooperation clause provided that the Pattons "must cooperate with us in performing all acts required by this policy." Appellee's App. at 123. The policy further provided that the Pattons were required to assist American Family, at its request, in "[a]ny matter relating to a claim or suit" including "[m]aking settlement." Id. at 121.

We review the district court's grant of summary judgment de novo. Occidental Fire & Cas. Co. v. Soczynski, 765 F.3d 931, 935 (8th Cir. 2014). "[W]e can affirm on any ground supported by the record." MSK EyEs Ltd. v. Wells Fargo Bank, Nat. Ass'n, 546 F.3d 533, 540 (8th Cir. 2008) (citing Gamradt v. Fed. Labs., Inc., 380 F.3d 416, 419 (8th Cir. 2004)).

Although the parties and the district court devote most of their attention to the umbrella policy's exclusions, with Donaldson also emphasizing the policy's severability clause in this second appeal, we believe it is prudent to first address the more fundamental question whether the Pattons violated the policy's cooperation clause. For if that was the case, and the violation was material and prejudicial, any coverage under the umbrella policy is voided without having to address the import of any other policy provisions. See, e.g., Steen v. Those Underwriters at Lloyds, London Signatory to Policy No. E0100191, 442 N.W.2d 158, 162 (Minn. Ct. App. 1989) (citing Juvland v. Plaisance, 96 N.W.2d 537, 541-42 (Minn. 1959)).

American Family argues the Pattons violated the policy's cooperation clause by entering into a Miller-Shugart settlement after American Family had already protected them from any personal liability in the Drake-Ryan settlement. American Family further contends this violation of the cooperation clause was prejudicial because the admission of liability in the Miller-Shugart agreement robbed American Family of liability defenses that could have been asserted in the underlying suit in state district court. We agree.

No Minnesota court appears to have addressed the propriety of an insured entering into a Miller-Shugart settlement after already enjoying full protection from personal liability under a Drake-Ryan settlement; we believe the dearth of cases on this issue is explained by the transparent incongruity of doing so. We also believe the

Minnesota courts would conclude such conduct results in a material and prejudicial breach of an insured's duty to cooperate.

Under Minnesota law, the only reason for permitting an insured to compromise an insurer's ability to contest liability by entering into a Miller-Shugart agreement is to avoid the potential of the insured's personal exposure where the insurance company has denied the existence of coverage for an underlying claim. Stated differently, the only time an insured is permitted to disregard the obligation to cooperate with the insurer is when there is a risk of personal exposure for the entire amount of any damage award due to the insurer's denial of the existence of coverage. Indeed, in the seminal case of Miller v. Shugart, the "threshold issue" the Minnesota Supreme Court addressed was whether insureds breached their duty to cooperate by entering into a settlement which confessed liability in exchange for a release of personal liability. 316 N.W.2d 729, 733 (Minn. 1982). The court balanced the insurer's "duty to defend and indemnify its insureds" with the insureds' "reciprocal duty to cooperate with their insurer in the management of the claim." Id. The court observed that "[w]hile the defendant insureds have a duty to cooperate with the insurer, they also have a right to protect themselves against [a] plaintiff's claim" because of the risk of personal liability "when their insurance coverage is in doubt." Id. at 733-734. For this reason, the court held the insureds "did not breach their duty to cooperate with the insurer, which was then contesting coverage, by settling directly with the plaintiff." Id. at 734.

Subsequent Minnesota cases have explained this balancing of an insured's duty to cooperate with an insurer's duty to defend and indemnify, focusing on the insured's potential personal exposure as a primary reason he may ignore his reciprocal duty to cooperate by entering into a Miller-Shugart agreement during periods when coverage is in doubt:

Only the insurer's denial of the existence of *any* coverage for the claim and the resultant exposure of the insured to liability for the entire amount

of any damage award provide a basis for requiring the insurer's right to the insured's cooperation to yield to the insured's need to extricate himself or herself without the insurer's agreement.

Buysse v. Baumann-Furrie & Co., 448 N.W.2d 865, 872 (Minn. 1989) (Buysse I) (citing Miller v. Shugart, 316 N.W.2d at 734-35; Clemons v. Wilcox, 392 N.W.2d 863, 867 (Minn. 1986)).

We thus read Buysse I as setting forth two prerequisites that must be satisfied before an insured's decision to enter into a Miller-Shugart settlement overrides the duty to cooperate: 1) the insurer must be denying the existence of any coverage for the underlying claim; and 2) the insured must be risking liability for the amount of any damage award from the underlying claim. In other words, a Miller-Shugart settlement does not "fit," and an insured violates his duty to cooperate, unless those two conditions are present. See Buysse v. Bauman-Furrie & Co., 481 N.W.2d 27, 29 (Minn. 1992) (Buysse II) ("The danger of using a Miller-Shugart settlement when it does not fit is that it exposes the insured to a claim that it has breached the cooperation clause in its policy. If that happens, then the entire policy coverage is voided.").

In this case, American Family admitted the existence of coverage as the primary carrier on the automobile policy, but denied coverage as the excess carrier under the umbrella policy, complicating the question whether the first Buysse I condition is present here. There is no need to resolve that complication, however, because the second Buysse I condition is clearly absent – the Pattons did not risk liability for the entire amount of any damage award when they entered the Miller-Shugart settlement because American Family had already provided them full protection from personal liability under the earlier Drake-Ryan settlement. Entering into the subsequent Miller-Shugart settlement therefore did not "fit" the circumstances of this case, and exposed the Pattons to a claim that they breached the umbrella policy's cooperation clause.

We also agree with American Family that the breach of the cooperation clause was material and prejudicial under the circumstances of this case. First, "[t]he breach here was material since [the Miller-Shugart] settlement foreclosed the possibility of a later settlement in which the insurer could participate." Steen, 442 N.W.2d at 162. Second, the breach was prejudicial because it compromised the rights American Family enjoyed prior to the settlement to contest liability and the amount of damages. To avoid paying a money judgment following a Miller-Shugart settlement, the insurer must show there was fraud or collusion between the settling parties, or successfully challenge in a subsequent garnishment action the plaintiff's claim that the amount of damages are "what a reasonably prudent person in the position of the defendant would have settled for on the merits of the plaintiff's claim." Miller v. Shugart, 316 N.W.2d at 734, 735. In addition to being limited to this "relaxed standard" of what a reasonably prudent person may do, the insured may also lose the right to a jury trial. Steen, 442 N.W.2d at 162. Finally, in this particular case, the Pattons agreed to an entry of judgment against Todd and Jacob jointly and severally, making no allowance for the possibility that Todd may not be negligent or that Donaldson's comparative fault (if any) may reduce part of the judgment, robbing American Family of an attempt to raise legitimate defenses to liability claims. Cf. Innsbruck Village Ass'n v. Stock Roofing, Inc., No. A06-95, 2006 WL 3772286 at *2-3 (Minn. Ct. App. Dec. 26, 2006) (concluding a Miller-Shugart settlement "prejudices the insurer's attempts to raise legitimate defenses to liability claims . . . by stipulating that the basis for all damages was negligence covered under the policies" and because the insurer has to defend against the settlement in the ensuing garnishment under the relaxed reasonably prudent person standard and may not have the right to a jury trial).

We conclude the Pattons breached the umbrella policy's cooperation clause by entering into a Miller-Shugart agreement after already being protected from personal liability in the Drake-Ryan settlement, and that such breach was material and prejudicial. It is therefore unnecessary to address the other coverage issues raised by the parties in this appeal.

## III

For the reasons stated, we affirm the judgment of the district court.

_____