# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 98-2118

———————

American Bankers Insurance    *
Company of Florida,    *
   *
      Appellee,    *
   *   Appeal from the United States
     v.    *   District Court for the District
   *   of Minnesota.
Dinah Gilberts; Jane Anderson,    *
   *
      Appellants.    *

———————

Submitted: March 8, 1999

Filed: June 8, 1999

———————

Before BEAM and HEANEY, Circuit Judges, and GOLDBERG,[1] Judge of the United States Court of International Trade.

———————

BEAM, Circuit Judge.

Dinah Gilberts and Jane Anderson appeal from the district court's grant of summary judgment to American Bankers Insurance Company of Florida (American Bankers). The district court held that their brother's death resulting from autoerotic

———————

[1]The Honorable Richard W. Goldberg, Judge of the United States Court of International Trade, sitting by designation.

asphyxiation was caused by an intentional self-inflicted injury, and thus was not covered by his group accident insurance policy. We reverse.

## I. BACKGROUND

Gary Forst was found dead in the sleeper compartment of his parked semi-trailer truck. One end of a rubber bungee cord was around his neck and the other attached to the handle of a briefcase on a shelf above his head. His head and one shoulder had slipped off the bunk. The parties agree that Gary Forst died as a result of autoerotic asphyxia[2] gone awry. Forst's sisters, Gilberts and Anderson, filed a claim on an accident insurance policy issued by American Bankers. American Bankers filed a declaratory judgment action seeking a determination that Forst's death was not covered by the policy.

The district court granted summary judgment to American Bankers. It found that Forst's death was the result of an intentional, self-inflicted injury which was excluded from coverage under the language of the policy and Minnesota law. Gilberts and Anderson appeal.

## II. DISCUSSION

Forst was covered by a group accident insurance policy issued by American Bankers. The policy agrees to pay beneficiaries of the insured for, among other things, death resulting from a covered injury. The policy defines "injury" as a "bodily injury which is . . . caused by an accident." The policy also specifically excludes a loss which results from "suicide or attempted suicide . . . or an intentional self-inflicted injury."

---

[2]Autoerotic asphyxia involves reducing the amount of oxygen to the brain with the purpose of enhancing the pleasure of masturbation or other autoerotic activities.

Thus Forst's death would not be covered if either: (1) it was not accidental, or (2) it resulted from an "intentional self-inflicted injury."

In granting summary judgment to American Bankers, the district court stated that it could not find, as a matter of law, that Forst's death was not accidental. That ruling is not disputed. The district court did, however, find that coverage was precluded by the self-inflicted injury exclusion.

To fall within an intentional act exclusion, it is not enough to merely show that an actor intended the act which resulted in the injury. See Continental Western Ins. Co. v. Toal, 244 N.W.2d 121, 124 (Minn. 1976) (citing Caspersen v. Webber, 213 N.W.2d 327 (Minn. 1973)). Under Minnesota law, an intentional act exclusion applies only where the insured acts with a specific intent to cause bodily injury. See State Farm Fire & Cas. Co. v. Wicka, 474 N.W.2d 324, 329 (Minn. 1991); Woida v. North Star Mut. Ins. Co., 306 N.W.2d 570, 573 (Minn. 1981). The intent to injure can be shown by evidence of actual subjective intent, or the intent may be inferred as a matter of law in certain fact situations. See, e.g., Wicka, 474 N.W.2d at 329. Generally, intent may be inferred as a matter of law only if the nature and circumstances of the act are such that harm was *substantially certain to result*. See id. It is not disputed that Forst did not intend to kill or injure himself, and that his subjective intent in limiting the flow of oxygenated blood to his brain was simply to enhance his pleasure from masturbation. Thus, Forst's intent to cause a self-inflicted injury may only be inferred if his act, as intended, was "substantially certain" to cause a bodily injury.[3] Therefore, we must

---

[3]American Bankers argues that any harm that results from the act is enough to infer intent to inflict bodily injury and trigger the self-inflicted injury exclusion. While tempting, this argument fails. According to the plain language of the policy, the intent which must be inferred is intent to cause a bodily injury, not merely any generalized "harm." The two terms are not necessarily coextensive.

examine the act of partial asphyxiation as it was intended by Forst to determine whether bodily injury was substantially certain to result.

The evidence presented to the district court showed that autoerotic asphyxiation involves temporarily reducing the flow of oxygen to the brain, thus producing a euphoric light-headedness. This can be achieved by either: (1) restricting the amount of air entering the lungs, (2) restricting blood flow to the brain by applying pressure to the arteries in the neck that supply blood to the head, or (3) by applying pressure to the veins carrying blood out of the head. Forst used this third and most common method. It requires less pressure on the neck, and essentially keeps blood from leaving the brain, which continues to use oxygen until the oxygen in the blood is depleted enough to give the desired euphoric effect.

The evidence presented to date shows that the only substantially certain result of Forst's intended act, when performed successfully, is a temporary change in blood flow in the head, with the accompanying decrease of oxygen levels, causing light-headedness. According to the summary judgment evidence, the act usually does not leave visible marks on the neck. Forst's body exhibited burst blood vessels in the eyes and marks around his neck caused by the strap. However, both experts agreed that the damage Forst exhibited most likely occurred at death or post mortem. There was essentially no evidence advanced for purposes of summary judgment (but there may be at trial) that an individual's body is any different after the performance of partial asphyxia in this manner than it was before, nor was there any evidence introduced that the procedure involves pain of any kind. Since the evidence indicated that a change in blood flow, with its decrease in oxygen level, is the only substantially certain result of Forst's intended act, the proper inquiry then is whether this temporary change in blood flow, of itself, constitutes a bodily injury.

The district court held that Forst intentionally attempted "self-inflicted partial strangulation, which no reasonable jury could conclude was not a self-inflicted injury

under Minnesota law." We disagree. The policy itself defines injury as a bodily injury. Terms in insurance policies are to be given the plain and ordinary meaning as would be ascribed to them by a reasonable insured. See Farmers Home Mut. Ins. Co. v. Lill, 332 N.W.2d 635, 637 (Minn. 1983). We cannot say, as a matter of law, given the evidence presented to date, that a reasonable insured would find that a temporary decrease in the oxygen level in the brain, of itself, is a bodily injury in the ordinary sense of the term.[4] The two parties' expert witnesses are of course split on the question of whether the change in blood flow, of itself, is an injury. However, it is not a question for experts.

The district court relied on the reasoning in Sigler v. Mutual Benefit Life Ins. Co., 506 F. Supp. 542 (S.D. Iowa 1981), aff'd, 663 F.2d 49 (8th Cir. 1981). Sigler also involved a death caused by autoerotic asphyxiation. The Sigler court concluded that the victim's acts as intended resulted in injury because, had another person temporarily restricted the victim's ability to breath, it would be considered an injury. See id. at 545. The reliance is misplaced. While we do not question the conclusion that partial strangulation is an injury under Iowa law, whether the act is committed by one's self or another is irrelevant to whether the *result* of the act is a bodily injury in the ordinary sense of the term under Minnesota law. Further, the policy at issue in Sigler precluded coverage for "self inflicted injury *of any kind*" rather than the more specific "bodily injury" at issue here.

## III.   CONCLUSION

---

[4]The district court also points out that Gilberts and Anderson conceded at oral argument that "tissue damage results when one partially asphyxiates himself by putting pressure on his neck." However, the mere de minimis existence of tissue damage will not, as a matter of law, create a bodily injury in the ordinary sense of the term. The loss of a few cells could easily be so minimal that it would not rise to the level of a bodily injury as the average insured would understand the term.

Because we cannot say that, as a matter of law, the substantially certain result of the insured's intended act constitutes a bodily injury as a reasonable insured would understand the term, we reverse the district court's grant of summary judgment and remand the case for further proceedings.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.