Paula Givens CARSON, Plaintiff,

v.

METROPOLITAN LIFE INSURANCE COMPANY, Defendant.

No. Civ.A.SA98CA0469EP.

United States District Court,
W.D. Texas,
San Antonio Division.

Oct. 20, 1999.

Rebecca C. Lucas, Attorney at Law, Ft. Worth, TX, Bill D. Blanton, Law Offices of Wayne Wright, P.C., San Antonio, TX, Joe Shannon, Jr., Joe Shannon, Jr., Attorney at Law, Fort Worth, TX, for Paula Givens Carson, plaintiff.

Paul E. Ridley, Wolin, Ridley & Miller, L.L.P., Dallas, TX, Carolyn R. Konicek, Carrington, Coleman, Sloman & Blumenthal, L.L.P., Dallas, TX, for Metropolitan Life Insurance Company, defendant.

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

PRADO, District Judge.

On this date the Court considered the Defendant's motion for summary judgment, filed September 27, 1999, in the above-numbered and styled cause, and the Plaintiff's response to that motion. After careful consideration, the Court will grant the motion.

### Facts and Procedural History

Plaintiff's husband, John L. Givens, checked himself into Kimble Hospital in Junction, Texas, to undergo a Rapid Opiate Detoxification (ROD) procedure. Givens had become addicted to the drug methadone in an effort to recover from prior substance addictions. After more than five years as a methadone user, Givens decided to undergo ROD, a procedure that apparently involves placing a patient under anesthesia while the patient undergoes withdrawal from the opiate.[1]

While coming out from under the effects of the general anesthesia, Givens exhibited rapid breathing, uncontrolled bodily movements, incoherence, and delirium. Drugs were administered to counteract these reactions, but the drugs did not have the desired effect.[2] At some point, the doctors overseeing the procedure determined that Givens should be moved to Sid Peterson Memorial Hospital in Kerrville, Texas.

During the ambulance drive, Givens apparently vomited and aspirated matter into his breathing passage. The ambulance was forced to pull over, and doctors attempted to intubate Givens to aid his breathing. The procedure proved difficult, but was eventually accomplished. However, Givens was in a semi-comatose state upon arrival at the hospital. His condition worsened progressively and, eventually, his family ordered him removed from life support. Givens died sixty-five days after he was admitted to the hospital.

Paula Givens Carson, Givens's widow and the Plaintiff in this lawsuit, submitted a life insurance claim to Givens's employer. The claim did not seek payment under Givens's accident policy, only under his basic life insurance policy. Defendant, MetLife, the claims administrator of Givens's insurance plan, paid benefits under that policy in the amount of $71,062.79. Subsequently, Carson made a demand under the accidental death policy. MetLife initially denied the claim on the sole basis

---

1. This is, of course, a very broad description of the procedure, as it was not specifically described in the motions. Relevant to this Court's decision are the use of general anesthesia and the known possible side effects of the procedure, both of which are available in the evidentiary materials.

2. Indeed, there is some dispute as to the wisdom of the use of the drugs.

of the representation on Givens's death certificate that he died from "natural causes." However, upon conducting a review of the denial, requested by Carson, MetLife included in its investigation consideration of Givens's medical records. Upon a review of those records, MetLife determined, again, that Givens had died as a result of a mental or physical illness, which precluded payment of accidental death benefits. Carson now sues MetLife for recovery of accidental death benefits under her husband's insurance policy.

## STANDARD OF REVIEW

In the usual case, the party who seeks summary judgment must show by affidavit or other evidentiary materials that there is no genuine dispute as to any fact material to resolution of the motion. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n. 4, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Lavespere v. Niagara Machine & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir.1990); *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir.1986). To satisfy this burden, the movant must either submit evidentiary documents that negate the existence of some material element of the nonmoving party's claim or defense or, if the crucial issue is one for which the nonmoving party will bear the burden of proof at trial, merely point out that the evidentiary documents in the record contain insufficient proof concerning an essential element of the nonmoving party's claim or defense. *See Celotex Corp.*, 477 U.S. at 325, 106 S.Ct. 2548; *Lavespere*, 910 F.2d at 178.

Once the moving party has carried that burden, the burden shifts to the nonmoving party to show that summary judgment is not appropriate. *See Fields v. City of South Houston, Texas*, 922 F.2d 1183, 1187 (5th Cir.1991). The nonmoving party cannot discharge this burden by referring to the mere allegations or denials of the nonmoving party's pleadings; rather, that par-

ty must, either by submitting opposing evidentiary documents or by referring to evidentiary documents already in the record, set out specific facts showing that a genuine issue exists. *See Celotex*, 477 U.S. at 324, 106 S.Ct. 2548; *Fields*, 922 F.2d at 1187. In order for a court to find there are no genuine material factual issues, the court must be satisfied that no reasonable trier of fact could have found for the nonmoving party or, in other words, that the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict for the nonmovant. *See Liberty Lobby*, 477 U.S. at 249–50, 106 S.Ct. 2505; FED.R.CIV.P. 56(e).

Where the party opposing the motion for summary judgment will have the burden of proof on an essential element of his case at trial and does not, after adequate time for discovery, make a showing sufficient to establish the existence of that element, summary judgment may be entered against him. *Celotex*, 477 U.S. at 322–24, 106 S.Ct. 2548; *Fontenot*, 780 F.2d at 1194–95.

In reviewing a claims administrator's denial of benefits where that administrator is given discretionary authority to determine eligibility or to interpret a plan, a court must apply an abuse of discretion standard. *Meditrust Financial Ser. Corp. v. Sterling Chem., Inc.*, 168 F.3d 211, 213 (5th Cir.1999). This means that a court must determine whether the administrator's determination was reasonable and supported by substantial evidence. *Id.* at 215. On summary judgment, however, the court must determine only whether fact issues exist in the substantial evidence. *See Rhorer v. Raytheon Engineers & Constructors, Inc.*, 181 F.3d 634, 643 (5th Cir. 1999) (determining whether fact issue existed as to whether administrator abused its discretion). Thus, to the extent that MetLife suggests in its motion that this Court is required merely to determine whether more than a scintilla of evidence exists to support its determination, MetLife is in error. At the summary judg-

ment stage, the benefit of the doubt still remains with the nonmovant, and the Court will not grant summary judgment unless there is *no contested issue of material fact* in the substantial evidence.

## DISCUSSION

Givens's accidental death policy provides benefits for death caused by injuries that were caused solely by accident, where the injury was the sole cause of death and the covered loss occurred no more than ninety days after the date of the accident. Excluded from coverage are deaths "in any way [resulting] from or caused or contributed to by" physical or mental illness, diagnosis of or treatment for the illness. As the parties note, the policy does not define "accident."

That task is not as simple as it might first appear. *See Howard v. National Educ. Assoc. of N.Y.*, 984 F.Supp. 103, 108 (N.D.N.Y.1997) ("Everyone knows what an accident is until the word comes up in court."). The Court, however, finds that Carson has focused on that question to the exclusion of the more dispositive, and perhaps easier, issue—whether Givens died from an excluded event. *See Sims v. Monumental Gen. Ins. Co.*, 960 F.2d 478, 480 n. 3 (5th Cir.1992) (drawing distinction between whether injury was "accidental" or whether injury was excludable under clause excluding coverage for self-inflicted injuries).

Carson argues that this Court should define "accident" as "an event that was not intentional or natural." Carson apparently relies on numerous cases emphasizing the unintentional nature of "accidents" for the purpose of awarding benefits under an accidental death policy. *See, e.g., Schadler v. Anthem Life Ins. Co.* 147 F.3d 388, 397 n. 10 (5th Cir.1998) (where plaintiff died from drug/alcohol abuse, administrator must consider subjective intent and reasonableness of that intent in determining whether death was accidental); *Todd v. AIG Life Ins. Co.*, 47 F.3d 1448, 1455 (5th Cir.1995) (in case of autoerotic asphyxiation, approv-ing without adopting definition of accident as event from which plaintiff subjectively expected to survive, where such expectation was objectively reasonable). The Court has studied these cases and finds them generally inapposite to these facts. There, the question has been whether the event in question was accidental or self-inflicted. Of course, when considering that question, courts have necessarily focused on whether the actor intended the results of his actions. Perhaps the classic example of such a fact pattern is the case involving auto-eroticism. *See, e.g., American Bankers Ins. Co. v. Gilberts*, 181 F.3d 931, 933 (8th Cir.1999); *Todd*, 47 F.3d 1448; *Sims*, 960 F.2d 478; *International Underwriters, Inc. v. Home Ins. Co.*, 662 F.2d 1084 (4th Cir.1981); *Sigler v. Mutual Benefit Life Ins. Co.*, 663 F.2d 49 (8th Cir.1981); *Howard v. National Educ. Assoc. of N.Y.*, 984 F.Supp. 103 (N.D.N.Y. 1997); *Bennett v. America Intern. Life Assurance Co. of N.Y.*, 956 F.Supp. 201 (N.D.N.Y.1997); *Parker v. Danaher Corp.*, 851 F.Supp. 1287 (W.D.Ark.1994). The courts' analyses, and thus their ultimate determinations of whether the deaths were compensable in such cases, often turned on whether the insurance policies excluded deaths caused by self-inflicted injury. *Compare Sims*, 960 F.2d at 480 n. 3 (coverage excluded due to self-inflicted injury clause); *Sigler*, 663 F.2d at 49 (no coverage because injury was self-inflicted); *with Todd*, 47 F.3d at 1455 (death accidental where there is no self-inflicted injury exclusion); *Bennett*, 956 F.Supp. at 207 (where there is no self-intentional injury exclusion, summary judgment inappropriate on question of whether death was accidental). *But see Gilberts*, 181 F.3d at 933 (fact question existed on whether death was accidental, even where policy contained self-inflicted injury clause).

Because there is no self-inflicted injury question here, the issue before the Court is not whether Givens, or anyone, intended to engage in behavior that could reasonably be expected to result in death. The

question is whether Givens's death was in any way the result of mental or physical illness and is thus excludable from coverage under the accidental death policy. Put another way and from another perspective, the question is whether there is a fact issue on whether some new event, which could be called "accidental" and which occurred independently of Givens's treatment for an illness, brought about his death.

In making this determination, the Court has considered two additional sets of fact patterns that vary from the self-intentional injury/illness paradigm. The first of these is represented by *Senkier v. Hartford Life & Accident Ins. Co.,* 948 F.2d 1050, 1051 (7th Cir.1991). In that case, the deceased had been admitted to the hospital with Crohn's disease and required feeding by catheter. At some time during the deceased's hospitalization, the catheter slipped and punctured her heart. In a suit over the deceased's accidental death benefits, the plaintiff claimed that the damage to the heart had been accidental and not the result of the deceased's illness. The Seventh Circuit rejected this claim, holding that any *medical* mishap, even if the result of malpractice, can be said to result from illness. *Senkier,* 948 F.2d at 1054.[3]

There is another fact pattern that at least one court has held limits the holding in *Senkier. See Fegan v. State Mutual Life Assurance Co. of Am.,* 945 F.Supp. 396 (D.N.H.1996). In *Fegan,* the deceased was injured as the result of an accident and then died from complications in the hospital. The court held that because the triggering event was clearly an accident, the deceased's death *resulted* from an accident, and thus the plaintiff was entitled to accidental death benefits. *See id.* at 400.

■ The Court finds that the present case best fits in the *Senkier* paradigm. Without adopting all of the broad implications of that decision, the Court holds that where a patient is hospitalized for a physical or mental illness and dies as a result of any treatment for that illness, there can be no recovery for accidental death benefits where death as a result of illness is excluded. In the Court's view, this holding would even extend to deaths resulting from medical malpractice.

■ Having established this standard, the Court must determine whether there is any fact issue on whether Givens's death resulted from treatment for his illness or whether it resulted from a wholly separate "accidental" event. *See Bobier v. Beneficial Standard Life Ins. Co.,* 40 Colo.App. 94, 570 P.2d 1094 (1977) (where fact issue existed as to cause of aspiration, summary judgment on whether death was accident could not be granted). The Court finds there is no such fact issue. Certainly, there is no fact issue whatsoever that Givens died as the result of aspiration that occurred in the ambulance ride from Junction, Texas, to Kerrville. The only arguable point of contention is whether Givens recovered normally from the detoxification procedure.[4] The Court finds that, in light of all the evidence, resolution of this issue is immaterial. This is so because there is no evidence that, whatever the *direct* cause of the aspiration, it resulted from anything other than the treatment Givens received during and after detoxification. Because the death could have been reasonably anticipated as a result of the treatment, it

---

**3.** The Seventh Circuit noted that a person could die from an accident during the course of medical treatment, offering the hypothetical example of a case where the ceiling of an operating room collapsed while the insured was on the operating table. *Senkier,* 948 F.2d at 1054.

**4.** The Court agrees with, and will grant, Met-Life's motion to strike the portions of Carson's summary judgment evidence that were

not before the administrator at the time of his or her decision. *See Vega v. National Life Ins. Serv., Inc.,* 188 F.3d 287, 297–98 (5th Cir. 1999). However, the Court notes that the evidence would not change the result here, and the Court has used some of the evidence in this Order, to more fully explain the analysis the Court relied upon in reaching its determination.

was not accidental or was otherwise excluded from coverage because it resulted from the treatment of an illness. *See Landress v. Phoenix Mut. Life Ins. Co.,* 291 U.S. 491, 501 n. 2, 54 S.Ct. 461, 78 L.Ed. 934 (1954) (Cardozo, J., dissenting) (quoting *Western Commercial Travelers' Ass'n v. Smith,* 85 F. 401, 405 (8th Cir.1898)).[5]

Carson's argument is that Givens's reaction to the procedure—the thrashing, incoherence, and fever—were normal and did not cause his death. Instead, Carson argues that Givens died because medical personnel failed to intubate him before putting him in the ambulance. This argument is somewhat difficult to follow. Why should Givens have been intubated unless aspiration was threatened by the procedures and medications he had been subjected to as a result of his illness? Carson offers no evidence that intubation should be routinely practiced before transporting all patients. In fact, among the papers Givens signed upon admission for detoxification procedure was a warning that aspiration was a possibility. If this were not the case, then, on the evidence here, there would be no basis for arguing that Givens should have been intubated.

The Court believes the evidence is uncontradicted that the vomiting and aspiration occurred as a result of treatment for an illness. That treatment may have been the application of general anesthesia, or it may have been the administration of narcotics or sedatives. The treatment may even have been negligent, an issue not before this Court. But it was undisputably medical treatment for a mental illness.[6]

■ Carson argues that MetLife's initial decision to deny coverage was arbitrary, because it was based solely on a review of the death certificate, which listed the cause of death as "natural." Carson contends that "cerebral anoxic damage and respiratory arrest are clearly not the result of 'natural causes.' " Carson has offered no evidence supporting that contention. Moreover, there is no general court-imposed duty to investigate in ERISA claims. *See Vega,* 188 F.3d 287, 297–98, although, of course, the administrator must support its denial with substantial evidence. Assuming for the sake of argument that the certificate alone does not provide such evidence, the Court finds that any investigative deficiency was cured through the review process. In that process, MetLife considered all the medical documentation contained in Givens's file, including all office notes, test results, documents from Kimble County EMS, and letters and reports issued by Givens's attending physicians. MetLife was not required to consider various "medical interpretations" that Carson alleges it should have considered, nor would consideration of those interpretations mandated a different result. None of the evidence offered by Carson suggests that Givens's vomiting and aspiration were not caused by the treatment he received for methadone addiction. The only fact issue raised by Carson is an issue regarding the specific cause of the vomiting and why Givens was not intubated before being transported. While those issues are compelling, they are not material to Carson's claim for death benefits.

## CONCLUSION

ACCORDINGLY, it is ORDERED that the Defendant's motion for summary judgment is GRANTED, and this cause is DISMISSED. It is further ORDERED that

---

5. The modern trend has been toward adopting Cardozo's approach to defining the term "accident," rejecting more difficult to apply distinctions between accidental results and accidental means. *See* John D. Ingram & Lynne R. Ostfeld, *The Distinction Between Accidental Means and Accidental Results In Ac-*cidental Death Insurance, 12 FLA.ST.U.L.REV. 1, 9 (1984). The newer approach is to look to whether the consequences are unexpected. *Id.*

6. There is no argument from Carson that methadone addiction is not a mental illness.

MetLife's motion to strike (Docket No. 30) is GRANTED.